NicholsoN, C. J.,
delivered the opinion of the Court.
At the February Term, 1868, of the Circuit Court for Hamilton county, sitting at Harrison in said county, Andy Williams was indicted for the murder of Adolph Deutch, *40 The indictment charges that , the prisoner did feloniously, and of his malice aforethought, assault Adolph Deutch, and then and there willfully, maliciously, deliberately and premeditatedly kill and murder the said Adolph Deutch, alleging that the murder was committed in Hamilton county. At the February Term, 1870, the defendant was tried by a jury of Hamilton county, and found guilty of murder in the first degree. After a motion for a new trial was discharged, defendant’s counsel filed the following reasons in arrest of judgment: First, That the record does not show that the indictment was found and returned into court by a grand jury, duly elected and impan-elled according to law. Second, That the record does not show, that the grand jurors were selected and impanelled, from that portion of Hamilton county over which this court has jurisdiction. Third, That there is no averment in the indictment, that the murder was committed in that portion of Hamilton county over which the court has jurisdiction. Fourth, That there are no sufficient charges in the indictment to constitute murder in the first degree. Fifth, That the offense of murder in the first degree is not charged in the indictment. The reasons in arrest of judgment having been overruled, the court pronounced judgment of death upon the defendant. From this judgment defendant appealed to this court, and tendered his bill of exceptions. The first question is, was there error in the court, in overruling the motion in arrest of judgment? "We think not. As to the first reason assigned, the record shows, that the sheriff returned into court the writ of venire faeias executed upon twenty-five good and lawful citizens of Hamilton county, and, that from the *41 jurors so summoned, the court proceeded as the law directs, to select and impanel the grand jury. This is all regular.
As to the second reason — the record shows, that the grand jury was composed of good and lawful citizens of Hamilton county. The words “good and lawful” men comprehend every necessary qualification in such case prescribed by law: Bonds v. The State, Mart. & Yerg., 146; The State v. Alderson, 10 Yerg., 523. But it was not necessary to aver in the indictment, that the offense was committed in that portion of Hamilton county over which the court .had jurisdiction: Code, 5125.[1] It is only necessary, that the proof shall show that the offense was committed within the jurisdiction of the court. This fact is fully shown by the proof. Besides — the act, establishing a special Common Law and Criminal Court at Chattanooga, with jurisdiction over civil districts Nos. 4 and 14, does not disqualify the citizens of those districts from being competent jurors, either grand or petit, in the Circuit Court for the county, holden at Harrison.
As to the fourth reason, the indictment charges that Andy Williams “did feloniously and of his malice aforethought, assault Adolph Deutch, and then and there willfully, maliciously, deliberately and premeditatedly did kill and murder the said Adolph Deutch,” etc. This charge is in the language of the Code, 4598, defining the crime of murder in the first degree, and is therefore sufficient.
*42 As to the fifth reason — it is the same in substance as the fourth, and is for the same reason untenable. The indictment is remarkable for its conciseness and brevity, but it contains every essential ingredient of a good indictment for murder in the first degree. The motion in arrest of judgment was, therefore, properly overruled.
It is next insisted for the prisoner, that a new trial ought to be granted, because Henry Deutch was allowed to detail a conversation he had with the prisoner in the jail, soon after his conviction and sentence on a former trial, in which conversation he confessed, that he had killed the deceased, and detailed the manner of the killing and his motives. This evidence does not seem to have been objected to on the trial, and, it appears further, that witness testified, that the confession was made freely and not under the influence of threats, or fear, or any inducements offered to the prisoner to confess. It is not insisted here that this evidence was not competent, but that in view of the circumstances under which the confession was made, and in favor of life, the court should hold, that it ought to have been excluded by the Circuit Judge from the jury. We have felt the force of these suggestions, and have therefore felt it our duty to scrutinize the entire proof with special care, to see, if, without this evidence, there is any ground, on which to doubt the correctness of the verdict. After the most anxious scrutiny we have been unable to discover any reason for supposing, that this proof made the guilt of the prisoner more certain, than it was without. In this view, therefore, as the proof was competent and not ob *43 jected to, we see no error in the refusal of the court below to grant a new trial, nor do we see in it any ground on which we can set aside the verdict.
The only remaining question is, whether the verdict of the jury is sustained by the proof. It appearing by the testimony of Gr. Berry, a jail guard, that the prisoner had been convicted of stealing watches, from the jewelry store of the deceased, and had been sentenced to be confined in the prison at Chattanooga for twenty days. After he had been in prison several days, he told one of the guard several times, that two of Deutch’s watches were hid near Bird’s Mill, and if they would go with him, he would show where they were. "Witness, told Deutch of this two or three times, and advised him to go and get them. Henry Deutch, brother of the deceased, proved, that his brother and himself were informed, on some two or three occasions, by one of the jail guard, that the prisoner stated that two of the stolen watches were hid near Bird’s Mill, five or six miles from Chattanooga, and if witness or his brother, would go with him, he would show where they were. On the 5th of November, 1867, deceased told witness he would go. This was when prisoner’s term of imprisonment lacked eight days of being out. Deceased got a pair of gloves and comfort, and witness’ coat to wear as an overcoat and a navy revolver, and started, saying he would be back by 3 o’clock. All the chambers of the pistol were loaded. Witness exhibited before the jury the gloves, comfort and coat of witness, (a black one with velvet collar,) and a pair of pants, boots, coat and hat, which he stated the deceased had on when he left that *44 morning; also the pistol. The next morning witness went in search of his brother, and found him dead about five miles from Chattanooga, lying near the road, with two or three wounds on his head, his skull broken in the back of his head, and his body stripped of both coats, his pants, and boots. A stick or wagon standard was lying near, with blood on the larger end. He saw the defendant when he was brought into Chattanooga, four or five days after the killing, and he had on the pants, boots, coat and hat which deceased wore away. The deceased was killed in the 5th civil district of Hamilton county. Witness stated, that after prisoner had been tried before and convicted and sentence pronounced, witness went to the jail. He wanted to know of the prisoner how his brother died; whether he died quick or whether he struggled; and the prisoner told witness, that his brother was going before and he was behind, and his brother was whistling a tune, when he first struck the deceased on the side of the head, and the deceased then turned to draw his pistol, and the prisoner then struck him again on the back of the head, and he fell dead on his face. The prisoner then said, he killed the deceased because he had sworn a lie against him about the watches. No inducements or threats of any kind were used or offered to the prisoner to induce the statements. Witness just told him he was not armed, or going to do any thing to him. He only wanted to know, how his brother died. Majors, the jailor, and several others were present when he and the prisoner had this conversation. He does not recollect the names of any of the others who were present, but *45 a person named Avery. Don’t know where Avery is. Majors is here as a witness for the State, under the rule.
¥m. Rogers thought the wagon standard shown to him was made by himself — it was of white oak and a deadly weapon — he missed one of the standards out of his wagon, which stood on the road side near his house, about a mile from where Deutch was killed.
J. D. Blackford testifies, that he found the body of the deceased on the morning of the 6th of November, 1867, in the 5th civil district of Hamilton county, about five miles from Chattanooga, stripped of all clothing except his shirt, vest, slips and socks. His skull was broken towards the back of his head. There was the appearance of the body having been dragged some eight or ten feet into the bushes on its face. The stick or standard shown witness was lying near the body and had blood on it.
John Majors, the jailor, does not remember such conversation as that stated by witness Deutch, as having taken place in his presence. He might have remembered it and he might not. His recollection was as good as that of common men.
J. M. Conner lives about five miles from Chattanooga, and in about a mile of Bird’s Mill. On the day .before he heard that Deutch was killed, about 10 o’clock, Deutch and the prisoner stopped at the gate and inquired the way to Lovingood’s. Witness shewed him, and Deutch said to the prisoner: I knew it was not that way, pointing across the bottoms, in another direction. Deutch said to the prisoner, come, let’s go, and started, and the prisoner started. Deutch went before and prisoner behind, *46 some three or four steps apart. Prisoner had a stick in his hands, which looked like a wagon standard and looked like the one exhibited to witness.
Lucinda Low, colored, testifies, that on the day before she heard of the killing of Deutch, she met prisoner in the road, about a mile from Lovingood’s — she did not know him — but thinks the prisoner is the same one. He had on a dark colored coat, like the one exhibited to her with the velvet collar. He had a pair of black pants on his arm, and a pair of boots in his hand. He had on a dirty shirt and an old pair of shoes.
A. B. Conner testifies, that as a sheriff he went to hunt the prisoner, on the second day after Deutch was killed. He came in view of a cabin door, and saw the prisoner come out of the door — he knew him and he started to run to a thicket. He saw the prisoner plain, and he had on the hat, coat and pants of the deceased. He had seen the deceased wear them and recognized them. When the prisoner was captured, a few days afterwards, he had on the hat, coat, pants and boots, of Deutch. The place, where he saw the prisoner run from, was about two and a half miles from where deceased was found and was in the edge of Georgia. Soon after the prisoner was arrested, he told witness he had killed Deutch, and that he did it to get his clothes and get away.
Upon this evidence, with or without the confessions of - the prisoner made to Henry Deutch, immediately after his first trial, his guilt is placed beyond any reasonable doubt. No hypothesis can be made consistent *47 with his innocence. The proof discloses a deliberate scheme to induce the deceased to go with him in search of the watch, and, as the sequel shows, for the purpose of taking his life. It shows deliberate and premeditated preparation for the deed, in securing the wagon standard, shown to be a deadly weapon, as he passed along the road. His felonious intent was freely avowed to the sheriff. He was met immediately after the murder on the same day, and near the place, with the coats, pants, hat and boots of the deceased. He was seen soon after-wards by the sheriff with the same clothing on, and when arrested he was dressed in the clothes of the deceased, He admitted to the sheriff soon after his arrest that he had killed the deceased to get his clothes and to get away. Here is clear and uncontradicted proof that the prisoner did the killing, and that he did it willfully, maliciously, deliberately and premeditatedly. The confession made, after his first trial, makes his guilt no clearer or more certain than it was made without that proof. There was no error in the court below in refusing a new trial.
The judgment of the court below is therefore affirmed.

 See State v. Donaldson. Post, 48; State v. Quartemus. Post.—