W. R. FRAZIER AND JOHN WILLIAMS *v.* STATE.

(*Knoxville.*   September Term, 1906.)

1. **MURDER, FIRST DEGREE.** Evidence held not to preponderate against verdict of.

Evidence stated and held not to preponderate against verdict of murder in the first degree, and, therefore, not to entitle plaintiff in error to a reversal upon the facts. (*Post, pp.* 435-439.)

2. **CHARGE OF COURT.** No reversal for omission to charge upon lower offenses embraced under charge of murder in the first degree, if not prejudicial.

Where it appears to be absolutely certain that defendant was not prejudiced by the trial judge's omission to charge upon the lower offenses embraced in the indictment under the charge of murder in the first degree, there will be no reversal for such omission. (*Post, pp.* 439-441.)

Cases cited and approved: Good v. State, 1 Lea, 293; State v. Hargrove, 13 Lea, 178; Tarvers v. State, 90 Tenn., 485-499.

3. **SELF-DEFENSE.** Against apparent danger exists, when; charge making right depend upon what would be the conduct of persons of ordinary prudence, caution, and courage is erroneous.

The right of self-defense against apparent danger exists where a person honestly believes, upon reasonable grounds, as the facts appear to him, from the violence of another, that he is in danger of death or great bodily harm, and such right cannot be made to depend upon what effect the same circumstances and situation would produce upon the mind of a person of ordinary prudence, caution, and courage; and a charge or instruction that a person of such prudence, caution, and courage must, under the circumstances and situation of the

Frazier v. State.

accused, believe it absolutely necessary to kill to save him-
self from death or great bodily harm, to justify the killing as
in self-defense, is erroneous.    (*Post, pp.* 441-449.)

Cases cited and approved:  Grainger v. State, 5 Yerg., 459; Cope-
land v. State, 7 Humph., 479; Morgan v. State, 3 Sneed, 480;
Rippy v. State, 2 Head, 219; Williams v. State, 3 Heisk.,
37; Jackson v. State, 6 Baxt., 452; Allsup v. State, 5 Lea, 362;
Hull v. State, 6 Lea, 249; Allen v. United States, 150 U. S.,
563; Hickory v. United States, 151 U. S., 303; People v. Len-
non, 71 Mich., 298.

Case cited and disapproved:  Steinmeyer v. People, 95 Ill., 383.

4.  **SAME. Same. Erroneous instruction as to apparent danger
    where it is a case of actual danger or no danger at all is not
    prejudicial nor reversible error, when.**
    But where it is a case of actual danger or a case of no danger,
    and not a case of apparent danger, a charge or instruction
    to the effect that the circumstances and situation must be
    such as to induce a person of ordinary prudence, caution,
    and courage to believe it absolutely necessary to kill to save
    himself from death or great bodily harm, is not prejudicial
    to the accused, and does not constitute reversible error.  (*Post,
    pp.* 441, 442, 443, 445, 446, 448.)

5.  **CHARGE OF COURT. Refusal of special requests not made
    a part of the record by bill of exceptions cannot be reviewed or
    considered by supreme court.**
    Refusal to charge, in a criminal case, special requests for
    additional instructions appearing in the transcript of the
    record, but not made a part of the record by the bill of ex-
    ceptions, cannot be considered or reviewed by the supreme
    court.    (*Post, pp.* 449, 450.)

6.  **SAME. Same. Special requests are not made a part of the
    record by being set out in motion for new trial.**
    Special requests for additional instructions are not made a part
    of the record by being set out in the motion for a new trial,

Frazier v. State.

made in the court below, because such motion is not the action of the court, but the statement of the party, and the facts therein recited may or may not be true. (*Post, p.* 450.)

7. **SAME.** Every fact and element of the offense must be proved beyond a reasonable doubt to warrant a verdict of guilty.

The charge of the court, after stating the theory and contention of the State, instructing the jury that, if they find the theory and contention of the State to be true, defendant would be guilty of murder in the first degree, and they should so find, is erroneous, because it fails to instruct the jury that every fact and element of the offense must be found to be true beyond a reasonable doubt to warrant a verdict of guilty. (*Post, pp.* 450-461.)

Cases cited and approved:    Purkey v. State, 3 Heisk., 26; Wiley v. State, 5 Baxt., 662; Lawless v. State, 4 Lea, 179-182; Railroad v. Gower, 85 Tenn., 473, 474; Owen v. State, 89 Tenn., 698; Owen v. State, 89 Tenn., 705; Hamilton v. State, 97 Tenn., 456; Rex v. Stone, 6 T. R., 528.

8. **SAME.** Evidence creating a reasonable doubt as to the truth of contention of self-defense entitles defendant to acquittal.

The charge of the court, after stating the theory and contention of the accused as to self-defense, instructing the jury that, if from all the facts and circumstances, they find the defendant's theory and contention to be true, he should be acquitted, is erroneous, because the law is the defendant is entitled to an acquittal where the evidence as to self-defense creates in the mind of the jury a reasonable doubt as to its truth. (*Post, pp.* 451, 460-461.)

Cases cited and approved:    Wiley v. State, 5 Baxt., 662; Hamilton v. State, 97 Tenn., 456; Legere v. State, 111 Tenn., 376.

9. **SAME.** Misleading as eliminating defense of self-defense, and as not requiring proof of the offense and venue beyond a reasonable doubt is erroneous.

The charge of the court, instructing the jury that the law pre-

Frazier v. State.

sumes every man innocent until the contrary is shown by proof; that, though absolute certainty of guilt is not required, a moral certainty is; and that, before the jury can find the defendant guilty, they must be satisfied from the evidence that the deceased was killed by defendant in Roane county, is erroneous and misleading, as eliminating the defense of self-defense, and as improperly charging with reference to the quantum of proof required to establish the killing and venue, whereas the material facts of the offense and venue must be established, not only to the satisfaction of the jury, but beyond a reasonable doubt. (*Post, pp.* 452, 453, 460-462.)

**10.  SAME.** Finding of guilty must be made from the evidence beyond a reasonable doubt, as with or without mitigating circumstances, when.

The charge of the court instructing the jury that, if they find from the evidence that defendant is guilty of murder in the first degree, with or without mitigating circumstances, they will so render their verdict, is erroneous, because it fails to require such finding to be made from the evidence beyond a reasonable doubt. (*Post, pp.* 453, 454, 462, 463.)

**11.  SAME.** Instruction requiring the reasonable doubt to be a substantial and well-founded doubt is erroneous, when.

The charge of the court instructing the jury that the defendant should not be convicted of any offense of which they entertain a reasonable and substantial and well founded doubt is erroneous, as requiring the reasonable doubt to be both substantial and well founded, especially where the doctrine as to reasonable doubt is charged meagerly in a single paragraph, and not referred to in other parts of the charge. (*Post, pp.* 454, 463-467.)

Cases cited and approved:  Purkey v. State, 3 Heisk., 26; Butler v. State, 7 Baxt., 37; Lawless v. State, 4 Lea, 178; Turner v. State, 4 Lea, 207; Owen v. State, 89 Tenn., 700; Commonwealth v. Webster, 5 Cush. (Mass.), 295.

117 Tenn—28

Frazier v. State.

Cases cited: State v. Coleman, 20 S. C., 455; State v. Summer, 55 S. C., 32; Brotherton v. People, 75 N. Y., 159-163; State v. Blunt, 91 Mo., 503.

12. **MITIGATING CIRCUMSTANCES.** Found in verdict for murder in the first degree should not be disregarded by the trial judge, when; case in judgment.

It is error for the trial judge to disregard the finding of mitigating circumstances in a verdict for murder in the first degree, and to sentence defendant to death, instead of imprisonment for life, where the deceased was a violent and dangerous man, having little regard for the law, and not hesitating to attempt to redress his own wrongs, real or imaginary, with force and violence, who had previously and wrongfully assaulted the defendant with a knife, and had been justifiably knocked down by the defendant, and who in consequence had made threats to kill the defendant, which threats had been communicated to defendant, and the defendant had just cause to be afraid of the deceased, and sons, and the fatal meeting may have been accidental. (*Post, pp.* 467, 468.)

13. **SAME.** Same. Trial judge's erroneous disregard of finding of mitigating circumstances may be corrected by supreme court in its judgment of affirmance.

The error of the trial judge in disregarding the finding of mitigating circumstances in a verdict for murder in the first degree, in a case where it should be regarded, is not one for which a reversal and new trial may be allowed, but it is one which the supreme court may correct in its judgment upon affirmance. (*Post, p.* 468.)

---

FROM ROANE.

---

Appeal in the nature of a writ of error from the Circuit Court of Roane County.—GEORGE L. BURKE, Judge.

Frazier v. State.

SAM EPPS YOUNG, W. L. WELCKER, FRANK McELWEE, BREAZEALE & STAPLES and A. P. THOMPSON, for Frazier and Williams.

ATTORNEY-GENERAL CATES, J. L. NICHOLAS and WRIGHT, WRIGHT & HAGGARD, for State.

MR. JUSTICE SHIELDS delivered the opinion of the Court.

The plaintiffs in error, W. R. Frazier and John Williams, were indicted upon a charge of murder in the first degree for killing one Jordan Miller, at the November term, 1905, of the circuit court of Roane county. They were tried at the succeeding March term of that court upon their plea of not guilty, and were by the jury found guilty of murder in the first degree, with mitigating circumstances. Their motion for a new trial was overruled, and the trial judge, disregarding the finding of the jury of mitigating circumstances, imposed a death sentence. From this judgment they have prosecuted an appeal in the nature of a writ of error to this court, and have assigned several errors upon the action of the trial court in overruling their motion for a new trial and entering judgment against them.

The uncontroverted facts are these:

Jordan Miller, the deceased, lived in the mountains of Roane county, about seven miles from the town of Rockwood. John Williams lived within about one mile of him, probably in the direction of Rockwood. W. R.

Frazier lived about midway between Miller's house and Rockwood, but not directly upon the road usually traveled by Miller in going to that town. W. R. Frazier and Jordan Miller, some two years before the homicide, had had a difficulty in the town of Rockwood, in which Miller had assaulted Frazier with a knife, and the latter had knocked the former down. Frazier had been indicted for this, and tried and acquitted. From that day, there had been bad blood between the two men, and Miller had repeatedly threatened to kill Frazier. These threats had been communicated to Frazier, and he was evidently afraid of Miller, and in constant apprehension that he would make good his many violent threats. Williams had also had a difficulty with Miller about working a road, but it does not appear to have been a serious one. Miller was a bold, violent, and dangerous man, frequently resorting to force and violence to avenge or right supposed grievances against his neighbors, and had the reputation in the community of a man who would do violence to those whom he believed had wronged him, and execute threats made. He had four sons residing with him, all grown, or so nearly so that they could carry and use arms, and the father and sons were in the habit of carrying their guns with them wherever they went. At the time of the homicide, among them, they owned one Marlin rifle and four shotguns.

The homicide took place on the mountain between Jordan Miller's and Rockwood, and about four miles from the house of Miller, early on the morning of August

16, 1905. Jordan Miller and his two sons, James and Charles, were going to Rockwood in a wagon. Jordan and James were riding in the wagon, and Charles was walking behind, carrying a mowing scythe. The plaintiffs in error were on the roadside, and a fight ensued, in which Jordan Miller and Charles Miller were both killed by shots which were fired by the plaintiffs in error. James Miller escaped, and is the chief witness for the prosecution. The plaintiffs in error testified in their own behalf.

Jordan Miller was found below the road some twenty-five or thirty yards, on the mountain side, with several bullet holes in him, two of which were in the head, and his face was powder-burned. His shirt was also on fire when he was found, something like one hour after the shooting. Charles Miller was found in the road lying upon the scythe. He had one bullet wound in the breast and one in the face. His chin was blown off, evidently with a shotgun, and his face was powder-burned. No arms were found near either of them.

The plaintiffs in error were tried in this case for the homicide of Jordan Miller.

The contention of the State is that the plaintiffs in error were lying in wait upon the public road for Jordan Miller, and that when he and his sons came along, unarmed, the former, without provocation, opened fire upon them and killed Jordan and Charles.

That of the plaintiffs in error is that they were on their way to the Bledsoe mines, which were situated be-

tween Frazier's house and Rockwood, where Frazier had some business, and to Rockwood, where they both had some business in a bank; that they had no information that Jordan Miller or his sons would be on the road that day, and had no expectation of meeting them; that they had stopped in the edge of the road for a few minutes in order to allow Williams to attend to a call of nature; that Jordan Miller, his two sons, James and Charles, and another man, whom they took to be one Walker, a relative of Miller, came along; that Jordan Miller, when he saw Frazier, arose in the wagon and said, "Now, God damn you; I have got you," and opened fire upon him with a double-barreled shotgun, and the man Walker, who was walking behind the wagon with Charles Miller, at the same time began to fire upon plaintiffs in error with a large pistol; that they, having with them a rifle and a shotgun, returned the fire; and that in this way Jordan and Charles Miller were killed. They further say that Walker ran off, carrying the shotgun used by Miller and the pistol used by himself. They were arrested at their homes that day, and denied that they had shot the Millers. They explain this by stating that they had agreed to do so for fear the Miller boys would do violence to their families.

James Miller testified that his father, brother, and himself were unarmed and made no assault whatever upon the plaintiffs in error, but that the plaintiffs in error came out from the bushes and began to fire upon them without provocation. The effect of his evidence is

that Frazier shot his father and Williams his brother Charles. He also testified that Walker was not with them that morning. There is also some circumstantial evidence tending to sustain the theory of the State.

If the contention of the State is true, the plaintiffs in error were properly found guilty of murder in the first degree. If that of the plaintiffs in error is true, they should have been acquitted. The jury found for the State, and we cannot say from this record that the evidence preponderates against the verdict. Therefore, without any discussion of the evidence, we must hold that the plaintiffs in error are not entitled to a reversal upon the facts.

There are a number of errors of law assigned, of which we will now dispose.

1. The first of these is that the trial judge failed to charge upon all the degrees of homicide and offenses included in the indictment. The charge upon this subject is in these words: "A charge of murder in the first degree, by operation of law, embraces a charge of murder in the second degree, of voluntary and involuntary manslaughter, and assault and battery, and simple assault. Manslaughter of neither grade, an assault and battery, and simple assault under the proof in this case, do not lie."

The trial judge then proceeds to properly define murder in the first and second degrees, and does not again refer to the lesser degrees of homicide or to the offense of assault and battery. We do not think the omission to

charge the law upon the subject of manslaughter and assault and battery, and the statement, in effect, that they are not involved in this case, is error of which the plaintiffs in error can complain. It is now well settled in this State that an error which will entitle a plaintiff in error to a reversal of a judgment against him must be one that prejudices him and affects the merits of the case. The contentions of both the State and the plaintiffs in error in the trial below excluded all idea that the plaintiffs in error were or could be guilty of the offenses upon which the jury were not instructed. The contention of the State was that the defendants were lying in wait for the deceased upon the public highway, and shot them down without provocation, in consequence of an old grudge, and were therefore guilty of murder in the first degree; while that of plaintiffs in error is that the meeting was sudden and accidental, and that Jordan Miller and another man first fired upon them, and that they shot only in their necessary self-defense. If the contention of the State upon the facts is true, it is certain that the plaintiffs in error were guilty of murder, and any instructions upon the lesser grades of homicide would have been irrelevant. If the contention of the plaintiffs in error is true, they could not possibly be guilty of any offense; for it was necessary for them to kill Jordan Miller in justifiable self-defense. They had the right to carry their self-defense to the extreme limit, and it could not possibly be said that in doing so

the violence resorted to by them was excessive, and they were therefore guilty of a lesser degree of homicide.

It is evident that the instructions to the jury upon the offenses embraced in the indictment below the offense of murder would have been abstractions. The cases in which this question has been passed upon in this State, and held adversely to the contention of the plaintiffs in error, are *Good* v. *State,* 1 Lea, 293; *State* v. *Hargrove,* 13 Lea, 178; *Tarvers* v. *State,* 90 Tenn., 485-499, 16 S. W., 1041.

The better practice to be pursued by trial judges undoubtedly is for them to charge upon all offenses embraced in the indictment, because whenever there is any doubt that the defendant has been prejudiced by such omission it will be error, for which it will be the duty of this court to reverse the judgment and remand the case for a new trial. It is only in cases where it is absolutely certain that the omission was not prejudical to the defendant, in the trial court, that a charge omitting instructions upon every offense contained in the indictment can be sustained; and it is because of such absolute certainty in this case that this assignment of error is now overruled.

2. The charge of the court upon the subject of self-defense is assigned as error. The particular portion of the charge complained of is in these words: "The situation at the time of the killing must have been such as to induce persons of ordinary prudence, caution, and courage, situated as defendants were, to believe it absolutely nec-

essary at the time to kill the deceased, in order to save themselves from death or great bodily harm."

It is said that this entire statement is without precedent, and constitutes reversible error. It is insisted it is in direct conflict with the law of self-defense, as announced by this court in the cases of *Grainger* v. *State,* 5 Yerg., 459, 26 Am. Dec., 278; *Copeland* v. *State,* 7 Humph., 479; *Morgan* v. *State,* 3 Sneed, 480; *Rippy* v. *State,* 2 Head, 219.

Our attention has not been directed to any case in this State in which an instruction like the one in question has been given by a trial judge to a jury. We do not think that any such case can be found. In some of the other states similar instructions have been held to be correct, while in others they have been held erroneous. The law of self-defense in Tennessee is as laid down in the cases of *Grainger* v. *State,* supra, and explained and modified in those of *Copeland* v. *State, Morgan* v. *State,* and *Rippy* v. *State,* supra, and in the later cases of *Williams* v. *State,* 3 Heisk., 37; *Hull* v. *State,* 6 Lea, 249; *Jackson* v. *State,* 6 Baxt., 452, and *Allsup* v. *State,* 5 Lea, 362.

In *Grainger's Case* it was held that a homicide committed by one who was in danger of death or great bodily harm, or believed himself to be, from the deceased, induced by the conduct of the latter, was self-defense.

In *Morgan's Case* it is said: "The second error assigned is in the instructions of the court. In stating the rule in *Grainger's Case,* the court added that the 'proof ought to show that his [the prisoner's] fears were founded on some reasonable ground; that the law would not

excuse the criminal act of the defendant, though under the influence of fear, if these fears were baseless, and phantoms of the imagination.' In this we think there is no error. The qualification of the rule in *Grainger's Case,* above laid down, has frequently been recognized by this court since the case of *Copeland* v. *State,* 7 Humph., 479, in which it was substantially approved. We hold it to be in accordance with the well-established doctrine of the common law, and is the settled law in this State."

In *Rippy's Case,* Judge Caruthers, speaking for the court, says: "The law on this subject is, to excuse a homicide, the danger of life or great bodily injury must either be real, or honestly believed to be so at the time, and upon sufficient grounds. It must be apparent and imminent. Previous threats, or even acts of hostility, how violent soever, will not of themselves excuse the slayer; but there must be some words, or overt acts at the time, clearly indicative of a present purpose to do the injury. Past threats and hostile actions, or antecedent circumstances, can only be looked to in connection with present demonstrations as grounds of apprehension. To constitute the defense, the belief or apprehension of danger must be founded on sufficient circumstances to authorize the opinion that the deadly purpose then exists and the fear that it will at that time be executed.

The character of the deceased for violence, as well as his animosity to the defendant, as indicated by words and actions then and before, are proper matters for the

Frazier v. State.

consideration of the jury on the question of reasonable apprehension. Even if sufficient cause to fear does exist, but the deed is not perpetrated under the apprehension it is calculated to inspire, or the fear is feigned or pretended, the defense will not be available. So a case must not only be made out to authorize the fear of death or great harm, but such fear must be really entertained and the act done under an honest and well-founded belief that it is absolutely necessary to kill at that moment to save himself from a like injury. It is scarcely necessary to remark that a real or apparent necessity, brought about by the design, contrivance, or fault of the defendant, is no excuse."

In *Jackson's Case,* which more particularly involved the admissibility of communicated threats made by the deceased against the defendant, and what constitutes an overt act indicating a present purpose to carry such threats into execution, it is said: "We fully assent to the first proposition maintained by the attorney-general, that is, previous threats or acts of hostility against the defendant, however violent they may be, will not of themselves justify him in seeking and slaying his adversary upon the assumption that it is necessary to do so in order to save his own life from the threatened danger. To excuse the slayer, he must act under an honest belief that it is necessary at the time to take the life of his adversary in order to save his own, and it must appear that there was reasonable cause to excite this apprehension."

Frazier v. State.

In *Allsup's Case,* the doctrine of self-defense is stated in these words: "The law has been long settled on this subject in our State, and is that if a party is in real or apparent danger of death or great bodily harm, or believes himself to be so, as evidenced by circumstances justifying that belief as the facts appear to him, and he in good faith, under such apprehension, kill his adversary, it is justifiable homicide."

We find nothing in these cases, which undoubtedly are controlling upon this question in this State, making the right of self-defense depend upon whether or not the defendant, when the deadly assault was made upon him, conducted himself as a man of ordinary prudence, caution, and courage would do under like circumstances. The only intimation to that effect is in the quotation from the case of *Steinmeyer* v. *People,* 95 Ill., 383, an Illinois case, made in *Allsup's Case,* in these words: "Men, when threatened with danger, are obliged to judge from appearances and determine by actual circumstances surrounding them, at least as much as if placed in other less exciting positions; and it would be monstrous to say that, if they act from real or honest convictions, induced by reasonable evidence, they shall be held responsible criminally for a mistake in the extent of actual danger, when other reasonable and judicious men would have been alike mistaken." It was not intended by this quotation to ingraft any such requisite upon our law of self-defense. It has always been considered in this State that the requirement that the apprehension of danger

be honestly entertained, and that it be upon "reasonable grounds," or upon "sufficient grounds," or that it be "well-founded" as the facts appeared to the defendant, sufficiently guarded and limited the right of self-defense in cases of apparent danger, and that it was not necessary to consider the effect that the circumstances under which the defendant acted would have had upon the mind of a prudent, cautious, and courageous man.

Whether a man assailed was courageous or cowardly has never been considered determinative of self-defense.

It has always been held that if a party committing a homicide was at the time in actual danger of death or great bodily harm, or honestly believed himself to be so upon reasonable grounds, as the facts appeared to him, from the violence of the deceased, his action was justifiable self-defense, without regard to his character for prudence, or courage, or excitability, or cowardice, or how he conducted himself at the crucial moment, when it was to be determined whether he or his adversary should suffer great bodily harm or death.

In the case of *People* v. *Lennon*, 71 Mich., 298, 38 N. W., 871, 15 Am. St. Rep., 259, the doctrine sought to be injected into the law of self-defense by the charge of the trial judge is held to be unsound. It is there said:

"I do not think it proper that a jury should be authorized to determine the standard of courage in a case of self-defense, or whether the party attacked, in what he did in his defense, acted cowardly, and therefore without warrant. There is no question of courage or cow-

Frazier v. State.

ardice in the case.  I am aware that the rule laid down by the trial court has been sustained in some cases, collected and reported in Horrigan's Cases of Self-Defense; but the doctrine, or the reason given for it, is not in accord with the principles of self-defense, as now almost universally held and enunciated by the courts of this country.

"The question to be determined is, did the accused, under all the circumstances of the assault, as it appeared to him, honestly believe that he was in danger of his life, or great bodily harm, and that it was necessary to do what he did, in order to save himself from such apparent, threatened danger?  If so, the inquiry is ended.  It can and ought to make no difference whether he was a bold, strong man, used to affrays and personal encounters, or a weak, timid man, unacquainted with broils or assaults, as to the sufficiency of his reason for his action, if the jury believe he acted honestly, in fear of his life or great bodily harm.  The fact of his physical and mental makeup and his appearance in danger are to be considered, it is true, as bearing upon the honesty of his alleged belief, upon which he bases his right to act; but in such consideration the fact that the accused is weak, timid, and cowardly by nature is to be weighed in his favor, and not against him.  To hold otherwise would be to set at naught and to rule at variance with the well-known laws of human nature, and to place the weak and timid at the mercy of the strong.  It is bad enough to be constitutionally a coward, without having the law also declare

that the coward has no right to act in self-defense until he reaches the point where a man of average courage would have defended himself in the same manner, and to have the quantum of courage necessary in such cases determined by a jury sitting in safety and cool blood, listening to what must always be a tame recital of the facts compared to their appearance at the time they occurred."

Similar charges to that in this case have been held to constitute error by the supreme court of the United States.

In the first case below cited that court said: "To direct attention of the jury to the contemplation of the philosophy of the mental operations upon which justification or excuse or mitigation in the taking of human life may be directed is to hazard the substitution of abstract conceptions for actual facts of the particular case as they appeared to the defendant at the time." *Allen* v. *United States,* 150 U. S., 563, 14 Sup. Ct., 196, 37 L. Ed., 1183; *Hickory* v. *United States,* 151 U. S., 303, 14 Sup. Ct. 334, 38 L. Ed., 170.

However, this question is not material in this case. If the contention of the State is true, there was no pretense whatever of the right of self-defense. The plaintiffs in error were in no danger, real or apparent, from the deceased at the time they fired upon him. If the contention of the plaintiffs in error is true, they were in actual danger of death. They testify that the deceased, upon seeing them, arose in the wagon and cried out, "Now, God damn you; I have got you," and immediately began

to fire upon them with a shotgun, firing twice before they returned the fire, and also that the man Walker began to shoot at them with a large pistol at the same time that Miller assaulted them. There is, therefore, in this case, no room for the doctrine of apparent danger. The plaintiffs in error clearly had a right, upon their theory of the case, to kill the deceased. This was evident, certain, and unmistakable to any one, whether he was prudent or imprudent, cautious or incautious, courageous or cowardly. While we do not approve the charge upon this question, and commend the trial judge to the well-established precedents upon this subject, we do not think that the plaintiffs in error were prejudiced by the instruction given, and that, therefore, it constitutes no reversible error.

3. There are a number of assignments of error upon the refusal of the trial judge to give in charge certain requests that are claimed to have been seasonably presented by counsel for the plaintiffs in error. These requests appear in the transcript, but not in the bill of exceptions. Some of them state sound principles of law, applicable to the facts of the case, and, considering the meagerness of the charge of the court and the importance of the case, should have been charged, if properly presented. We cannot, however, consider these requests. They are not made a part of the record, and we cannot know that they were seasonably presented to the court, in the proper form, or in the language in which they appear in the transcript. It is too well established to re-

quire citation of authority that, to enable this court to review the action of the trial court in refusing to instruct the jury in accordance with special requests made by the parties, it must appear in the bill of exceptions that the requests were presented in writing at the conclusion of the general charge, and acted upon by the court, and the requests made a part of the record. This was not done in this case. There is no reference in the bill of exceptions to them. It is immaterial that they are set out in the motion for a new trial, made in the court below. It has frequently been held by this court that this does not make them a part of the record. The motion for a new trial is not the action of the court. It is the statement of the plaintiff in error, and the facts therein recited may or may not be true.

4.   The charge of the trial judge upon the quantum of proof necessary to convict the defendants is also assigned as error. The portions of the charge necessary to be considered in disposing of this assignment are as follows:

"The insistence of the State is that on the 16th day of August last the deceased, Jordan Miller, and his two sons, were on their way to Rockwood, with a wagon and team, with the deceased (Jordan) driving, his son Jim riding in the wagon with him, while the other son, Charlie, was walking behind, carrying a mowing scythe, and, while they were going along the road unarmed, the defendants, without warning, provocation, or excuse, willfully and deliberately opened fire upon them with

guns from the bushes on the roadside, and deliberately shot the deceased and his son Charlie to death.

"If you find this contention of the State to be true, these defendants would be guilty of murder in the first degree, and you should so find.   On the contrary, the defendants insist that the deceased was driving a team along the road at the place of the tragedy, with his son Jim in the wagon, and another son Charlie, and a strange man they thought to be one Walker, were walking behind the wagon, and that they (the defendants) were in the woods near the road, where they had stopped on their way to Rockwood, when the deceased discovered them, and immediately, without any provocation on their part, fired upon them from the wagon with a shotgun, and at the same time the strange man from behind the wagon fired upon them with a big pistol, and that, having been thus assaulted, they opened fire upon the deceased, Jordan Miller, and killed him.   If, from all the facts and circumstances of the case, you find the defendants' contention to be true, they would be justified, under the law of self-defense, and not guilty.

"The testimony in the case by the only eyewitnesses is conflicting and contradictory, and it is your duty to reconcile it, if you can, and arrive at the correct facts and circumstances of the case, in so far as it is possible. I will charge you presently how you are to weigh and harmonize the evidence, and, if in this way (presently explained to you) you cannot harmonize and reconcile

the evidence, you may discard and disbelieve such parts of it as are not worthy of belief, in the light of all the other facts and circumstances of the case, and in the light of reason, common sense, and the natural and physical facts and conditions surrounding.

"The proof shows that Charlie Miller was killed at the same time that deceased, Jordan Miller, was killed. The defendants are not indicted in this case for the killing of Charlie Miller; but it is proper for you to consider the facts and circumstances of the killing of Charlie, in so far as they throw, light upon the killing of Jordan Miller.

"Threats of violence by the deceased against the defendant Frazier, however violent they may have been, would not justify the defendant in killing or assaulting, or provoking an assault, upon the deceased; neither will an antecedent fight, or difficulty between defendant and deceased, it matters not who was in the wrong. These things can be considered by the jury for the sole purpose of judging of any reasonable apprehension the defendant may have had of the deceased, and of the purpose and intentions of the parties at the time of the killing.

"Proof of the dangerous and violent character of the deceased can be looked to only on the question of reasonable apprehension.

"The law presumes every man innocent, and that presumption maintains until the contrary is shown by proof. Absolute certainty of guilt is not required, but moral certainty is.

"Before you can find the defendant guilty, you must be satisfied, from the evidence, that Jordan Miller was killed by these defendants and in Roane county. You are the sole judges of the evidence, and the weight and credit to be given to the evidence as a whole, as well as to the testimony of each and every witness who has testified. Where the evidence is conflicting, you must reconcile it, if it can be done; but, when you cannot reconcile the evidence with the truth, you must disregard such evidence entirely, if you do not think it is worthy of belief. In reconciling the evidence, you may look to the interest the witness may have in the outcome of the lawsuit, to his feelings and prejudices, if any he has, to his means of knowledge of the things he testifies to, to the reasonableness or unreasonableness of the story he tells, to his manner of testifying, to his intelligence and respectability, to whether such evidence is corroborated by other witnesses, and to the surrounding and attendant circumstances of the case, and as to whether such evidence stands to reason and common sense, good judgment, and knowledge of human nature and affairs generally, and having weighed the evidence in this way, give it just such weight as you think it entitled.

"If you find from the evidence that the defendants, or either of them are guilty of murder in the first degree, without mitigating circumstances, you will render a verdict of murder in the first degree, without mitigating circumstances. If you are of the opinion

that the defendants are guilty of murder in the first degree, with mitigating circumstances, you will say so by your verdict. When a verdict of murder in the first degree is rendered, with mitigating circumstances, the court has the power, in its discretion, to pronounce the death penalty, or commute the sentence to imprisonment for life in the penitentiary. If you be of the opinion, from the evidence and the law as charged you, that the defendants are not guilty of murder in the first degree, but are guilty of murder in the second degree, you will say so by your verdict, and fix their punishment for this offense by imprisonment in the penitentiary for a period of not less than ten nor more than twenty years. Where a reasonable doubt exists in the mind of the jury as to the guilt of the defendants, or either of them, of any one of the offenses charged, the defendants must have the benefit of that doubt, and they nor either of them should be convicted of any offense of which the jury entertains a reasonable and substantial and well-founded doubt.

"Take the case, gentlemen, and return such verdict as you find warranted by the law and the evidence."

It is said that by this charge the jury are in effect told that, if they are satisfied that the plaintiffs in error are guilty, they will convict them; that the jury were not instructed that, before they could convict, they must find the plaintiffs in error guilty of the charge upon which they were tried beyond a reasonable doubt; that they were not instructed that, before they could convict,

they must find every element of the offense to be proved beyond a reasonable doubt; and that the only charge upon reasonable doubt was as to whether or not the defendants were guilty of murder in the first degree, or in the second degree.

This assignment of error must be sustained. The plaintiffs in error were entitled, and it was the duty of the trial judge to charge the jury in clear and unmistakable terms, without any request, that in order to convict they must be satisfied of the guilt of the defendants beyond a reasonable doubt, and that this doubt extended to and included every element necessary to constitute the offense of which the jury, if they should convict, found the defendants guilty, and the verity of the affirmative defense, if any, relied upon by the defendants. The right of every defendant tried for a criminal offense to have this instruction given to the jury trying him is firmly and irrevocably fixed in our jurisprudence, and cannot be denied him.

In the case of *Purkey* v. *State*, 3 Heisk., 26, Judge Sneed, speaking for the court, says:

"This being so in the case, we are still led to the inquiry whether that humane principle of the common law which forbids a conviction of felony if the evidence generates a reasonable doubt of the guilt of the prisoner applies as well to misdemeanors as to felonies. There is a large class of misdemeanors, a conviction of which involves an ignominy scarcely less grave than a conviction of felony, in their punishment, as well as the moral

degradation which follows such conviction.    There are others in which the unlimited power of a jury in the imposition of fines might result in pecuniary impoverishment and ruin.    In all criminal accusations, of whatever grade, the presumption of innocence attends the accused from the moment of the first suspicion that had rested upon him until a jury has pronounced upon his guilt.    And out of this presumption has arisen the benignant doctrine that the accused must have the benefit of any reasonable doubt that may exist as to his guilt. And this is a very old and venerable doctrine of the criminal law.    *Rex* v. *Stone*, 6 T. R., 528.    We can see no reason why this just and humane principle should not apply to misdemeanors as well as felonies.    Indeed, in the ancient authorities, no such distinction is observed.    Its application has been distinctly recognized in several of the States, and it could not well be otherwise, since the common law has made no distinction, but declares, in reference to all criminal prosecutions alike, that 'neither a mere preponderance of evidence, nor any weight of preponderant evidence, is sufficient to prove the guilt, unless it generate full belief of the fact, to the exclusion of all reasonable doubt.'    3 Greenl., Ev., 29; 1 Stark., Ev., 478; 1 Hale, P. C., 300.    We hold that, in all offenses against the criminal laws cognizable by indictment or presentment, whether felonies or misdemeanors, to authorize a jury to convict, the evidence must be such as to convince them of the guilt of the defendant beyond a reasonable doubt."

In the case of *Owen* v. *State,* 89 Tenn., 698, 16 S. W., 114, the trial judge charged that "the law presumes every defendant to be innocent until his guilt is established beyond a reasonable doubt by proof. In other words, when the State prefers a charge against a citizen, before he can be convicted, the burden is upon the State to show by proof to your satisfaction the material elements of the offense charged. If the proof in this case satisfies you that at any time previous to the finding of the indictment the defendant, James O. Owen, had carnal knowledge of Mattie Randolph—that is, had sexual intercourse with her—in Robertson county, and that at the time she was the daughter of his wife, the defendant is guilty, and you should convict him; if not, then you should acquit him."

"This charge is erroneous. It is not sufficient to say that if the proof shows guilt 'to your satisfaction,' or 'if the proof satisfies you of defendant's guilt,' you must convict. There are degrees of satisfaction, and that which the law requires is 'satisfaction beyond a reasonable doubt.'

"It has been often said by this court that this well-understood phrase should not be departed from; but, if it is, then the full equivalent of the term must be used. In one case it is intimated that 'fully satisfied' might be equivalent to, or a charge that the facts must be 'fully proved' might fairly imply, the same character of proof, and, in the absence of special request for further instruction, a charge in these forms of 'fully satisfied'

or 'fully proved' might be good. *Lawless* v. *State*, 4 Lea, 180-182.

"But even this is doubtingly suggested, and courts admonished to adhere to the ancient and 'well-understood' phrase. 4 Lea, 179, 180.

"The preceding general statement quoted from the charge, to the effect that 'every defendant is presumed to be innocent until his guilt is established beyond a reasonable doubt by proof,' does not do away with the imperfection of the charge in reference to how far the jury must be satisfied.

"In this case, after making such statement, the judge explains what he means by saying: 'In other words, . . . the burden in on the State to show by proof to your satisfaction,' and that, 'if the proof in this case satisfies you, . . . you should convict.'

"These were stated in definition of his meaning, or equivalents, and, as such, limited his statement to their effect, and thereby made it erroneous. *Railroad Co.* v. *Gower,* 85 Tenn., 473, 474, 3 S. W., 824.

"It was proper to explain what was meant by them, and the explanation must be correct, or it is, of course, vitally misleading. It should have been, not that the proof 'must satisfy you,' but that it 'must satisfy you beyond a reasonable doubt.' "

In another case of the same style, reported in 89 Tenn., 705, 16 S. W., 115, the trial judge charged as follows:

"The law presumes every defendant to be innocent until his guilt is established beyond a reasonable doubt

by proof. In other words, where the State prefers a charge against a citizen, before he can be convicted, the burden of proof is upon the State to show by evidence to your satisfaction the guilt of the accused as charged. If the proof satisfies you beyond a reasonable doubt that at any time previous to the finding of this indictment, the defendant had carnal knowledge of Helen Randolph in Robertson county, and that at the time of such intercourse she was the daughter of his wife, the defendant is guilty, and you should convict him; if not, you should acquit."

The defendant, not being satisfied with this, requested the court to further instruct the jury that, "in order to convict the defendant, you must find that all the facts necessary to convict are proven to your satisfaction and beyond a reasonable doubt, and if, after weighing, considering, and comparing all the testimony, both for the State and the defendant, the jury cannot say that they feel an abiding confidence to a moral certainty of the guilt of the defendant, then they have a reasonable doubt and they should acquit."

The trial judge submitted this request to the jury with this qualification: "This is the law, gentlemen; but when boiled down, it simply means that, if you are satisfied from the proof in the case the defendant is guilty as charged, you should convict; if not, you should acquit."

Judge Snodgrass, speaking for the court, said: "This is erroneous. The charge was correct as given, and did not need to be 'boiled down,' because it was itself an

elaboration and addition to a former part of the charge, because that was not full enough, and this was the defect to be cured; but the meaning given it in the explanation was erroneous. It did not 'simply mean' that, 'if the jury was satisfied from the proof,' it should convict. We have already shown that these words are not equivalent of 'satisfied beyond a reasonable doubt' in the other case against defendant, and that it was error to so charge."

In the case of *Hamilton* v. *State,* 97 Tenn., 456, 37 S. W., 194, it is said:

"No prisoner is bound to establish his defense or innocence beyond a reasonable doubt. All doubts must be resolved in favor of the innocence of the prisoner, and the State must disprove his theory, and make out his guilt beyond a reasonable doubt, in order to convict the defendant."

And in *Wiley* v. *State,* 5 Baxt., 662, where the defendant relied upon the defense of an alibi, it was held that, if the proof tending to sustain that defense raised a reasonable doubt of the defendant's guilt, he must be acquitted. See *Legere* v. *State,* 111 Tenn., 376.

The law as here stated was not complied with in this case. It will be seen, from the above quotation from the charge, that his honor, after stating the theory of the State, told the jury that, if they should find the contention of the State to be true, the defendants would be guilty of murder in the first degree, and they should so find. There is here no instruction as to the quantum

of proof that would justify a verdict of guilty. The jury could have well inferred that, if they found by a preponderance of the proof that the theory of the State was true, they should find the defendants guilty. They should have been instructed that, before they could find the defendants guilty, the theory of the State must be found to be true beyond a reasonable doubt. The jury should also have been instructed that, before a verdict of guilty could be found against the defendants, every element necessary to constitute any offense of which they might convict must be proven beyond a reasonable doubt.

After stating the contention of the defendants, the jury were instructed that if, from all the facts and circumstances of the case, they should find the defendants' contention to be true, they would be justifiable under the law of self-defense, and not guilty. They should have been instructed that if they found this contention to be true, or if the proof offered to support it engendered in their minds a reasonable doubt of its truth, they should acquit. They are left, by the charge given, to understand that the burden was not only on the defendants to establish their theory of self-defense, but that they must do so to the satisfaction of the jury or by a preponderance of the evidence; while under the law, if the evidence offered to prove the offense created in the mind of the jury a reasonable doubt of its truth, the defendants were entitled to a verdict of not guilty.

Again, the jury is instructed: "The law presumes every man innocent, and that presumption maintains

until the contrary is shown by proof. An absolute certainty of guilt is not required, but moral certainty is. Before you can find the defendant guilty, you must be satisfied from the evidence that Jordan Miller was killed by these defendants in Roane county."

This disconnected statement of proof required to convict is unfortunate, and calculated to cause the jury to overlook the defense of self-defense; but the most prejudicial effect it probably had upon them was the quantum of proof they are told was necessary to establish the killing and the venue. They are told, in effect, if they are satisfied that the deceased was killed in Roane county by defendants, it would be sufficient, when it was necessary to establish these facts, not only to the satisfaction of the jury, but beyond a reasonable doubt. The jury could well consider the instruction here given as to the quantum of proof necessary to establish these material facts as explanatory of other parts of the charge in relation to the proof necessary to convict.

Again, his honor instructed the jury: "If you find from the evidence that the defendants, or either of them, are guilty of murder in the first degree, without mitigating circumstances, you will render a verdict of murder in the first degree, without mitigating circumstances. If you are of the opinion that the defendants are guilty of murder in the first degree, with mitigating circumstances, you will say so by your verdict."

He should have said: "If you find from the evidence

that the defendants are guilty beyond a reasonable doubt."

After the above charge, the jury was instructed that if they be of the opinion, from the evidence and the law as charged, that the defendants are not guilty of murder in the first degree, but are guilty of murder in the second degree, they will say so, and fix the punishment therefor by imprisonment in the penitentiary for a period of not less than ten nor more than twenty years. No instruction is given in the event the jury should find, the defendants are not guilty of either of these grades of homicide.

The concluding sentence of the charge, which contains the only reference to the doctrine of reasonable doubt, is in these words:

"Where a reasonable doubt exists in the minds of the jury as to the guilt of the defendants, or either of them, of any one of the offenses charged, the defendants must have the benefit of that doubt; and they nor either of them should be convicted of any offense of which the jury entertains a reasonable and substantial and well-founded doubt."

It is said that this only applied the doctrine of reasonable doubt to the grade of the offense of which the defendants might be convicted; that the jury was not instructed that they could not convict the defendants of any offense unless the proof established their guilt beyond a reasonable doubt; and special complaint is made on the words "substantial and well-founded doubt." It is

also said that, even if this sentence contains a correct charge upon the subject of reasonable doubt, it is so segregated from the important portions of the charge of the court, and obscured in the concluding sentence of it, as to make no impression upon the jury, and that it is a practical failure to charge at all upon this important question.

The defendants were entitled to have the jury fully and fairly instructed upon the doctrine of reasonable doubt. They were entitled to have it done in such a manner that the jury should understand that it was necessary for the State to establish the guilt of the defendants, and the existence of every element necessary to constitute the offense of which it was sought to convict them, before they could be found guilty, and if, from the entire evidence in the case, a reasonable doubt existed of the truth of the defense upon which the defendants relied, that they were entitled to a verdict of not guilty. We do not mean to hold that it was necessary to charge upon this subject in every paragraph of the charge, but in such manner that the jury should understand that the rule as to the quantum of proof required to convict in criminal cases applies to every material fact in issue. It is immaterial what views of the guilt or innocence of the defendants the trial judge or this court may entertain. The defendants relied upon and presented evidence to sustain a defense, which, if true, entitled them to an acquittal. They were entitled to have the jury pass upon that defense under proper instructions, and

to have the benefit of all safeguards that the law affords those accused of crime. If they were denied any of these rights, they have not had their constitutional right of a fair trial, upon a charge involving the highest penalty known to the law.

The words "substantial" and "well-founded" are not to be found in any of the definitions of reasonable doubt appearing in our cases, and the use of both, one following the other, is certainly very favorable to the State. We have some cases in which it is said that the doubt must be a "substantial doubt growing out of the evidence," and others in which it is said "the doubt must be well-founded." In some States similar definitions to that given by the trial judge have been held to be error. In others, the contrary is held. *State* v. *Coleman,* 20 S. C., 455; *State v. Summer,* 55 S. C., 32, 32 S. E., 771, 74 Am. St. Rep., 707; *Brotherton* v. *People,* 75 N. Y., 159-163; *State* v. *Blunt,* 91 Mo., 503, 4 S. W., 394; Elliott on Evidence, vol. 4, secs. 2707-3022.

But a similar instruction to a jury has never been approved by this court. It is unusual, and we think, when taken in connection with the utter failure to refer to the doctrine of reasonable doubt in other parts ·of the charge where it should have been, and the indirect and doubtful application made of it to the question of guilt, this statement was calculated to prejudice the defendants.

Reasonable doubt is said in *Purkey* v. *State,* supra, to

117 Tenn—30

be an honest misgiving as to the guilt of the defendant
upon the proof which reason entertains and sanctions as
a substantial doubt. It has been defined in other cases
by this court to be a doubt fairly growing out of the evi-
dence adduced, or arising from the want of evidence in
relation to material facts necessary to be established in
order to convict the defendant, honestly entertained, and
not a captious or whimsical doubt, created for the pur-
pose of acquitting the defendant.

Charges in which juries were instructed that by
reasonable doubt is not meant that which of possibility
may arise, but a doubt engendered by investigation of
the whole proof, and is an inability, after such investiga-
tion, for the mind to rest easy upon the certainty of
guilt, not an absolute certainty, which is not demanded
by the law, but a moral certainty, which is necessary as
to every proposition of proof requisite to constitute the
offense, or any grade of it, of which the defendant may
be convicted, have been sustained by this court.

Chief Justice Shaw, in *Commonwealth* v. *Webster*, 5
Cush. (Mass.), 295, 52 Am. Dec., 711, defined a reason-
able doubt to be "that state of the case which, after
comparison and consideration of all the evidence, leaves
the minds of juries in that condition that they cannot
say they feel an abiding conviction to a moral certainty
of the truth of the charge." This definition has been
approved and adopted by many of the courts of the sev-
eral States as sound.

It is difficult to give a definition more easily compre-

Frazier v. State.

hended by juries than the words themselves. They convey their own unmistakable meaning, and it is suggested in the case of *Butler* v. *State,* 7 Baxt., 37, that all efforts to explain them are of doubtful propriety. Certainly the cumulative effect resulting from the reiteration of the same idea by the use of the words and phrases "well founded doubt," "substantial doubt," and others of like meaning, is well calculated to fritter away and destroy all benefit to be derived from this important rule of law.

The departure of trial judges from the old and well-settled definitions and formulas of the law is always dangerous and liable to be productive of unnecessary delay and expense in the administration of the law, and often of a failure of justice. *Lawless* v. *State,* 4 Lea, 178; *Turner* v. *State,* 4 Lea, 207; *Owen* v. *State,* 89 Tenn., 700, 16 S. W., 115.

5. We are also of the opinion that the trial judge erred in disregarding the finding of mitigating circumstances by the jury in this case, and in sentencing the plaintiffs in error to death, instead of to imprisonment for life. There is no controversy upon this record but that Jordan Miller, the deceased, was a violent and dangerous man, having little regard for the law, and not hesitating to attempt to redress his own wrongs, real or imaginary, with force and violence; that he had at least three sons who were not unlike their father, all of whom had arms which they were in the habit of carrying about the country; that Jordan Miller had at

one time made a deadly assault with a knife upon plaintiff in error Frazier, and the latter had knocked him down, an act held, upon investigation in the courts, to be justifiable; that Miller had treasured this up against Frazier, and had made frequent threats to kill him, which had been communicated to Frazier, and which he knew Miller was likely to carry into execution. Williams had also fallen under the displeasure of Miller.

It is evident from this record that both of the plaintiffs in error were, and had just cause to be, afraid of Miller and his sons, and were in constant fear that they would be attacked, either openly or from ambush, by them, and were suffering greatly from this terrible and horrible apprehension. The evidence also fails to show that they knew Miller would pass the road that day, and it may have been an accidental meeting. While these facts did not justify the plaintiffs in error in attacking Jordan Miller without some act upon his part indicating a present purpose to carry his threats into execution, yet they did mitigate the offense of which they were convicted to the extent found by the jury, and this finding ought not to have been disregarded by the trial judge. While this is not error for which the case would be reversed and a new trial awarded, yet it is one appearing upon the face of the record, which we would have corrected, in the judgment of this court, upon affirmance, and we think it proper to express our views in relation to it.

The case, however, is reversed upon the error of the

Frazier v. State.

trial judge in failing to properly charge the jury upon the law of reasonable doubt, and for no other. The judgment of the circuit court will be reversed, and the case remanded for a new trial.