LOUISVILLE & NASHVILLE RAILROAD COMPANY *v.* GOWER.

## (*Nashville.* February 23d, 1887.)

1. MASTER AND SERVANT. *Negligence. Manner of loading car. Risks assumed by servant.*

A railroad company accepted and undertook the transportation of a freight car, loaded with lumber protruding longitudinally over its ends, which enhanced the danger of coupling this car with others. A servant of the company, while endeavoring, in the discharge of his duties,. to effect a coupling of this car with another, was caught between the end of the protruding lumber and the other car, and thereby seriously injured. For this injury he sued the company.

*Held:* 1. That neither the loading of a car in the manner stated, nor its acceptance in that condition for transportation by a railroad company, is *per se* an act of negligence; but only a fact to be looked to, in connection with the other facts averred and proved, in determining the question of negligence.

2. That inasmuch as the loading of cars in the manner stated, and their coupling in course of transportation, are demanded by the necessities of commerce, and are necessarily incident to the business of railroad transportation; that therefore the risks and dangers ordinarily incident to the transportation of such cars are assumed by employes voluntarily undertaking the service of a railroad company, although this particular service may be extra-hazardous.

Cases cited and approved: Day *v.* Railway Co., 2 Am. and Eng. Railroad Cases, 1126; Railway Co. *v.* Husson, 12 Am. and Eng. Railroad Cases, 24.

2. NEW TRIAL. *Damages recoverable for personal injury. Not for plaintiff's family.*

In an action by one who has suffered personal injuries he can recover of the wrong-doer such damages *only* as were sustained by *himself;* and therefore the Court erred, on the trial of such case, to admit, over defendant's objection, proof that the plaintiff had a wife and children, accompanied by a statement in reply to defendant's objection, that such fact was material and proper for the jury to consider in estimating damages.

30

Louisville & Nashville Railroad Company *v.* Gower.

3. SAME.  *Erroneous charge.*  "*Ordinary care*" *improperly defined.*

A charge of the Court is erroneous which instructs the jury that ordinary care or prudence is "just such care *as one of you* [them] similarly employed would have exercised under such circumstances" as those which surrounded the plaintiff.  Ordinary care is that degree of care which a *man of ordinary prudence* would have exercised; not that care which any *particular* man or set of men would have exercised.

4. PRACTICE.  *Exception to testimony not required to be repeated.*  *Waiver.*

When an objection to the introduction of incompetent evidence has been *once* properly taken, and overruled by the Court, it is not waived although the same evidence may have been subsequently admitted, through other witnesses, without objection.

---

FROM DAVIDSON.

---

Appeal in error from the Circuit Court of Davidson County.  FRANK T. REID, J.

Action by Gower against the railroad company for damages for personal injuries, which he avers were caused by the company's negligence.  Judgment below in favor of Gower.  The railroad company appealed.

SMITH & ALLISON ˙for Railroad Company.

DODD & ANDERSON, and GEO. B. GUILD, for Gower.

SNODGRASS, J.  Gower was a brakeman on a freight train of the Louisville & Nashville Railroad Company, and while in the discharge of one of his duties as such—that of coupling cars—was severely injured, and brought this action to recover dam-

ages for the injury sustained in the Circuit Court of Davidson County.

The injury occurred at Petersburg, Ky., on the night of April 5th, 1880.

About two miles from this point a car loaded with lumber had been taken into the train, and at Petersburg two flat cars were taken out of the train and left. These were put on the side track, and this necessitated the coupling of the . lumber car with a box car. In making this coupling the accident to Gower occurred. It was his duty to make the coupling, and he did it without special order. He stood at the south end of the box car, signaled the engineer to back the lumber car to it, which was carefully done. When within a few feet of the box car, the plaintiff observed that the plank projected over the north end of the lumber car—the end to be coupled—and that it was necessary for him to stoop to avoid it in entering between the cars to make the coupling. He did enter in this way, and made the coupling. While doing which, having some difficulty in getting the coupling-pin into the draw-head, he raised his head, and was caught between the box car and the projecting lumber, and badly injured.

These are the facts of the case as detailed by plaintiff as a witness on the trial before the jury.

He obtained a verdict and judgment for $9,500, and the railroad company appealed. The Commission of Referees heard the case, and reported in favor of reversal upon several grounds, omit-

ting others supposed by counsel of plaintiff in error to be objectionable, and both parties except to the report, and open the whole case for consideration by this Court.

The first error necessary to be noticed is in the admission of evidence. The bill of exceptions shows that Dr. Hampton was the first witness introduced for plaintiff. He was asked if plaintiff had a family, and answered that he had a wife and children. The defendant "objected to the admission of any proof going to show that plaintiff had a family," stating ground of objection to be that plaintiff recovers, if at all, for the damages he has individually sustained, and not that sustained by his family, and that such evidence was irrelevant.

The Court replied:

"I do not take that view of it, and I will allow the plaintiff to prove that he has a wife and children; but if counsel for defendant desire to argue the question hereafter, I will hear them, and if I conclude I am in error, I can then exclude it from the jury."

To which action of the Court defendant's counsel excepted. They did not again call it to the attention of the Court. The Commission of References report this to be error, and counsel of Gower except.

It is not seriously insisted, and indeed cannot be, that the evidence was relevant, but they interpose two objections to a reversal in consequence

of it.   First, that it is not material, and could
have had no prejudicial effect; and, second, that
the same evidence was admitted without objection
when given by another witness.

In answer to the first objection it is clear that
it was material when received under the opinion
of the Court.    The counsel for the railroad com-
pany had put their objection upon the ground
that the "recovery was for the damages sustained
by plaintiff individually, and not that sustained by
his family."    The Court, by his reply that "he
did not take that view of it," and by his action
admitting it with such statement to the jury, nec-
essarily impressed them with the belief that the
recovery would be affected by that evidence.   It
was equivalent to a charge that the loss to the
family could be considered by them.

It is well settled that no one else can recover
in life than the one injured in cases of this char-
acter, and he only for the damages which he, and
not others, has sustained.

Under § 3130 of the Code—providing that the
right of action which a person who dies from in-
juries received from another, or whose death is
caused by the wrongful act, omission, or killing
by another, would have had against the wrong-
doer in case death had not ensued shall not abate
or be extinguished by his death, but shall pass to
his widow, and, in case there is no widow, to his
children, or to his personal representative for the
benefit of his widow or next of kin, free from

the claims of his creditors—it was at one time held by this Court that the recovery might be in such actions for the damages to the deceased, and the damages resulting from his death to the parties for whose benefit the right of action survives. *Railroad Company* v. *Prince*, 2 Heis., 580, and other cases.

Yet this doctrine, not in accord with the earliest construction of the statute on this point (*Railroad Company* v. *Burke*, 6 Cold., 46), was rejected, and in the last reported cases (prior to the Act of 1883, Chapter 186) it was uniformly held by this Court that the first construction was the correct one, and that the damages recoverable were such only as the injured party had himself sustained. 9 Lea, 470; 11 Lea, 129. But whatever fluctuation in judicial opinion prevailed as to the recovery which might be had by the widow or the children, or the personal representative, in an action brought after death by either of these representatives for the damages resulting from the death, it was never held that the injured party, while living, could, for an injury to himself, recover any more or other damages than those resulting to him from the injury complained of. The indicated view of the Circuit Judge in the admission of this evidence was erroneous, and it made the error, for the reasons stated, a very material and prejudicial one.

As to the second answer to the objection, that another witness was permitted to give the same

testimony without exception, it is sufficient to say that defendant having excepted to it when the first witness was examined, and having had his exception overruled, it was neither necessary nor proper for him to repeat the exception. One ruling on one question is enough, and a repetition of similar exceptions is not to be required, if indeed to be tolerated.

The next most material error in the case, and first of two only necessary to be noticed, though there are other errors in the charge, is the instruction to the jury on the question of negligence.

The Circuit Judge charged the jury that—

"If the lumber car was so loaded that the ends of the lumber projected some eighteen inches over the rear end of the car, and that caused the act of coupling this car to another to be attended with more than ordinary danger, this was negligence in the agents of the company who so loaded it, and if the conductor accepted a car so loaded and attached it to his train, this was an act of negligence; and if an injury grew directly out of this negligence to the plaintiff, and plaintiff did not materially contribute to it, he is entitled to be compensated in damages."

And again:

"It is admitted that the lumber projected some eighteen inches over the rear end of the lumber car, and that this rendered the act of coupling this car to another car extra-hazardous. I charge

you that it was an act of negligence on the part of the conductor to have accepted a car so loaded; and if an injury grew out of this negligence to plaintiff, he is entitled to recover, unless he himself was guilty of such negligence that but therefor the injury would not have happened; bearing in mind that if he was acquainted with the extra hazard in making the coupling, he was required to exercise a degree of care proportioned to the danger of the risk required to be assumed."

Or, in other words, the Court told the jury that the reception of a car so loaded that the lumber projected eighteen inches over the end of it was negligence *per se*, and that this was an extraordinary hazard to which the railroad company must not subject its employes. *Day* v. *Railway Company*, 2 Am. and Eng. Railroad Cases, 126; *Railway Company* v. *Husson*, 12 Am. and Eng. Railroad Cases, 24.

This is not the law, nor is the coupling of such car necessarily the extra-hazardous duty for the performance of which the servant is not presumed to contract in assuming the ordinary hazards and risks of the service in which he voluntarily engages. It may be extra-hazardous in the sense that it is not a coupling ordinarily or frequently required; but it is one incident to the duties of the place, and not more hazardous, as a matter of law, than he stipulates to perform on the occasions, however rare or frequent, where such couplings become necessary in the variety of shipments

made to meet the demands and necessities of trade and transportation. Lumber of all kinds, iron, steel, and finished structures must often necessarily be transported on cars of shorter length than the material transported. It may not be practicable or proper to solidify the train by loading upon connected cars, and it must of necessity result that this loading will project and still the cars require to be coupled. To hold that such a service is not to be anticipated by a railroad employe as an occasional, incidental, though extremely hazardous duty to be performed, would be to do so in manifest disregard of the demands of the age upon transportation lines and their common and well understood service in conformity to such requirements.

The manner in which this car was loaded was a fact proper for averment in pleading, and to be taken into consideration in connection with all the other facts of the coupling and affecting it, to determine whether the company was guilty of such negligence as made it liable; but the loading was not, of itself, negligence nor the acceptance of the car so loaded by others.

The charge was otherwise incorrect and misleading, particularly in defining the care necessary to have been exercised by Plaintiff Gower in order to entitle him to recovery. The Court, after telling the jury that "it was the duty of the plaintiff to exercise such a degree of care in making the coupling as a man of ordinary prudence" would

have done, adds: "Just such care *as one of you,* similarly employed, would have exercised under such circumstances. If he exercised that degree of care, and was nevertheless injured, he is entitled to your verdict. If he failed to exercise that degree of care, he cannot recover."

The charge as to the exercise of such care as a man of ordinary prudence would have done was correct, but it was thought not full enough by the Judge, who illustrated what he meant by reference to the care which each one of the jurymen would have exercised. His charge, so limited, was erroneous. It does not appear that all or any of the members of the jury were men of ordinary prudence, and yet the Judge tells them that what he means by the "exercise of such care as a man of ordinary prudence would have exercised" is that it was the exercise of such care as one of them would have exercised if similarly situated. Under this instruction, if any member of the jury thought he would have done what Gower did in the coupling, he would of course have determined that Gower acted with the care required, and was entitled to recover. This illustration, used to define what he meant by "the care of a man of ordinary prudence," and thereby becoming its definition, was erroneous. The care he was required to exercise was that of a man of ordinary prudence in that dangerous situation, and not "just such care as one of the jury similarly situated" would have done, be that much or little

as each member might be very prudent or very imprudent.

The judgment must be reversed with cost, and the case remanded for a new trial.