## RAYMOND McCORMICK *v.* STATE.[*]

## (*Jackson.*   April Term, 1916.)

1. **WITNESSES.** Competency.  Husband and wife.  Objections. Time.

The defendant in a criminal case should object to the offer of his wife as a witness against him when she is first offered. (*Post, pp.* 221, 222.)

Code cited and construed: Sec. 7199 (S.).

2. **STATUTES.** Validity.  Subjects and titles of acts.

Acts 1915, chapter 161, entitled "An act to permit the husband or wife to testify," and providing that they shall be competent to testify for or against each other in criminal cases, is not invalid, under Constitution article 2, section 17, providing that no bill shall become a law which embraces more than one subject, that subject to be expressed in the title; the means employed in the act being the only way of accomplishing the object stated in the title, regardless of whether the words may compel the spouse to testify, that being an incidental result. (*Post, pp.* 222-224.)

Acts cited and construed: Acts 1915, ch. 161.

Case cited and approved: Cannon v. Mathes, 55 Tenn., 521.

Constitution cited and construed: Art. 2, sec. 17.

3. **WITNESSES.** Privilege.  Husband and wife.

Acts 1915, chapter 161, making the husband and wife competent witnesses for or against each other in criminal cases, does not destroy the rule that communication between them by virtue or in consequence of the marital relation, or any confidential communications between them, are inadmissible. (*Post, pp.* 224-228.)

Acts cited and construed: Acts 1915, ch. 161; Acts 1879, ch. 200.

[*]As to effect of Statute making husband and wife competent witnesses for or against each other upon the privilege as to confidential communications between them, see note in 27 L. R. A. (N. S.), 273.

Upon the question of waiver of privilege as to communication between husband and wife by calling one spouse as witness for the other, see note in 40 L. R. A. (N. S.), 43.

McCormick v. State.

Cases cited and approved: Patton v. Wilson, 70 Tenn., 101; Orr v. Cox, 71 Tenn., 621; Hyden v. Hyden, 65 Tenn., 408; Brewer v. Ferguson, 30 Tenn., 565; Kimbrough v. Mitchell, 38 Tenn., 540; Barker v. McAuley, 51 Tenn., 424; Mercer v. State, 40 Fla., 216; Ex parte Beville, 58 Fla., 170.

Cases cited and distinguished: Ins. Co. v. Shoemaker, 95 Tenn., 82; Norman v. State, 127 Tenn., 355.

Code cited and construed: Secs. 5596, 5597 (S.).

4. **WITNESSES.** Confidential relations. Husband and wife. Time for objections.

An objection by one accused of crime to a question asked his wife as witness, before the answer, because calling for confidential matter arising out of the marital relation, was properly and seasonably made. (*Post, pp.* 228-230.)

Case cited and approved: Kimbrough v. Mitchell, 38 Tenn., 540.

5. **CRIMINAL LAW.** Trial. Objections. Repetition.

It is not necessary to repeat an objection to a question put to a witness, one ruling on one question being enough, nor is repetition of similar exceptions required. (*Post, pp.* 230, 231.)

Case cited and approved: L. & N. R. R. Co. v. Gower, 85 Tenn., 471.

6. **WITNESSES.** Privilege. Waiver.

Where the objectionable portions of testimony of defendant's wife were not brought out on cross-examination, he did not by the cross-examination waive his right to object and except to such testimony, especially where he moved to strike all her testimony. (*Post, pp.* 231-233.)

Cases cited and approved: Baxter v. State, 83 Tenn., 664; White v. Suttle, 31 Tenn., 174; Tobin v. Railroad (Mo. 1891), 18 S. W., 996; Martin v. Railroad (1886), 103 N. Y., 626; Thomas v. State, 121 Tenn., 83; Scott v. Bank, 123 Tenn., 287.

Cases cited and distinguished: Horres v. Berkeley Chemical Co., 57 S. C., 189; Cathey v. Railroad, 104 Tex. 39; Barker v. Railroad, 126 Mo., 143.

McCormick v. State.

7. **WITNESSES. Privileged writings.**
The general rule is that letters between spouses are privileged, falling within the privilege for confidential communications which prevails between husband and wife. (*Post, pp.* 233-237.)
Cases cited and approved: State v. Wallace, 162 N. C., 622; Gross v. State, 61 Tex. Cr. R., 176.

8. **CRIMINAL LAW. Trial. Conduct of counsel.**
Counsel should not argue from evidence excluded by the court, or upon other cases, where there is nothing in the record to sustain the reference. (*Post, pp.* 237, 238.)

---

FROM HENRY

---

Error to the Circuit Court of Henry County.— THOS. E. HARWOOD, Judge.

FITZHUGH & MORTON, for plaintiff in error.

W. H. SWIGGART, JR., Assistant Attorney-General, for the State.

MR. A. R. GHOLSON, Special Judge, delivered the opinion of the Court.

The plaintiff in error, who will hereinafter be called the defendant, was indicted at the November term, 1914, of the circuit court of Henry county, for begetting an illegitimate child upon his wife's sister. He was tried and found guilty by a jury at the July term, 1915. Motions for a new trial and in arrest of judgment were made and overruled, and judgment was rendered that he be confined in the penitentiary

McCormick v. State.

of the State for an indeterminate period of not less than two years, nor more than ten years, and that he be rendered infamous, etc. From this judgment defendant has appealed to this court, and has assigned errors.

It is conceded by the learned assistant attorney-general that the judgment of infamy rendered by the lower court should be modified, so as to disqualify the defendant from holding office, but that no further disqualification should be adjudged; the offense described in the indictment not being an infamous crime. Shannon's Code, section 7199.

The case has been ably argued in this court, and most excellent and helpful briefs have been filed by both sides.

We do not deem it necessary, in the view which we take of the case, to discuss the evidence any further than it may be needed to consider those assignments of error which we will specifically consider.

·The fifth assignment of error is as follows:

"The court erred in declining to set aside the verdict and grant the defendant a new trial, because, over the defendant's objection, the court permitted the wife of defendant to testify against him, contrary to the rules of law and evidence."

It is insisted for the state that the defendant, not having objected to his wife when offered as a witness, an objection being later offered to only certain parts of her testimony, cannot now be heard to question her competency as a witness.

The constitutionality of chapter 161, Acts of 1915, is attacked; said act being in words and figures as follows:

"An act to permit the husband or wife to testify for or against each other in all criminal cases in Tennessee.

"Section 1. Be it enacted by the general assembly of the State of Tennessee, that hereafter in all criminal cases in the State the husband or wife shall be a competent witness to testify for or against each other. "

The State insists that, even without the above act, the wife would have been allowed to testify, if no objection was offered to her competency as a witness, and that, as the defendant did not seasonably offer such objection, he cannot question the validity of said act.

We think that this point is well taken, and that the objection should have been made by the defendant when she was first offered as a witness against him. But inasmuch as the court was subsequently asked to exclude all of her evidence, and as the question is one of importance, we deem it proper to consider the constitutionality of the above act.

It is contended by counsel for the defendant that the title of said act is restrictive, and that the body is general; that the express intent is "to *permit* the husband or wife to testify for or against each other in all criminal cases in Tennessee;" and the body of the act says, "The husband or wife *shall* be a com-

McCormick v. State.

petent witness," etc.; that the legislative intention as expressed in the caption was permissive—that is, either the husband or wife would be permitted to testify when either voluntarily offered as a witness, but not that either would be a compellable witness; that the body of the act meant that all the power of the law might be brought to bear to force one spouse to testify against the other.

The constitutional provision invoked is section 17 of article 2, as follows:

"No bill shall become a law which embraces more than one subject, that subject to be expressed in the title."

The provision of our Constitution just quoted was adopted to prevent surprise upon the legislature, by means of provisions in bills of which the titles gave no intimation, and they might therefore be overlooked and carelessly and unintentionally adopted. Cooley, Const. Lim. 145; *Cannon v. Mathes,* 8 Heisk., 521.

The method adopted in the body of the act for accomplishing the purpose expressed in the caption was to make the husband and wife competent witnesses, and thus to authorize or permit each to testify for or against the other. If it should result, from the making of the husband and wife competent witnesses, that each may be compelled to testify against the other, that is a mere incidental result of the provisions of the act which would be necessary to accomplish the purpose described in the caption of the act. It cannot be held invalid because of such result. This

provision of the body of the act is not only germane to the subject expressed in the title, but is a direct means, and probably the only direct means, available for accomplishing the purpose expressed in the caption. We are therefore of the opinion that the attack on the constitutionality of said act is without merit.

The sixth and seventh assignments of error are that the trial judge erred in permitting defendant's wife to testify to statements made by defendant to her in private, and in confidence, on the ground that such statements were privileged communications, and therefore incompetent as evidence against him.

It was contended in support of these assignments of error that the act above quoted, making the husband or wife a competent witness, does not affect the rules of law relating to privileged testimony, and that although made a competent witness, by removal of the disability of coverture, one spouse cannot divulge the confidential communications of the other, and may not testify against the other to facts which may have come to his or her knowledge solely by virtue of the marital relation.

In the case of *Insurance Co.* v. *Shoemaker,* 95 Tenn., 82, 31 S. W., 270, Mr. Justice Wilkes concisely stated the rule in this State, in civil cases, as follows:

"We are of opinion that *all* transactions and conversations had between the husband and wife in relation to their own affairs, not in the presence of some third person . . . must be excluded. . . . This, we think, is in accord with the former holdings

of this court''—citing *Patton* v. *Wilson,* 2 Lea, 101, 113; *Orr* v. *Cox,* 3 Lea, 621; *Hyden* v. *Hyden,* 6 Baxt., 408; *Brewer* v. *Ferguson,* 11 Humph., 565; *Kimbrough* v. *Mitchell,* 1 Head, 540; and *Barker* v. *McAuley,* 4 Heisk., 424.

The case of *Norman* v. *State,* 127 Tenn., 355, 155 S. W., 135, 45 L. R. A. (N. S.), 399, is one in which a very able opinion was delivered by Mr. Justice Buchanan, wherein he said:

''No public policy is sound which, in the name of public justice, invades the home and takes therefrom the wife as a witness against the husband, or the husband against the wife, and by means of the evidence of one consigns the other to the gallows, the penitentiary, or the jail. An increased number of convictions might result from such a policy, but at a cost which the public could ill afford. The home is the sanctuary of our civilization, and the increased number of convictions would not compensate for the homes destroyed.''

The foregoing decisions were rendered before the passage of Acts 1915, chapter 161. This act does not have the provision of chapter 200 of the Acts of 1879 (Shannon's Code, sections 5596 and 5597), that neither of them ''shall testify as to any matter that occurred between them by virtue or in consequence of the marital relation.''

So we must decide whether or not, since the passage of said act of 1915, a husband or wife will be permit-

135 Tenn.—15

ted, over objection, to testify in criminal cases in this State, as to any matter that occurred between them by virtue or in consequence of the marital relation, or as to any confidential communications between them.

"All communications between husband and wife are presumed confidential and privileged until the contrary appears." Wigmore, Ev., section 2336, pp. 3260, 3264.

The supreme court of Florida, in passing upon the statutes of that State removing the incompetency as witnesses of husband and wife, because of the interest of either, in both civil and criminal cases, among other things said:

"Society has a deeply rooted interest in the preservation of the peace of families, and in the maintenance of the sacred institution of marriage, and its strongest safeguard is to preserve with jealous care any violation of those hallowed confidences inherent in, and inseparable from, the marital *status*. Therefore the law places the ban of its prohibition upon any breach of the confidence between husband and wife, by declaring all confidential communications between them to be incompetent matter for either of them to expose as witnesses. . . . But the reason of the rule for excluding the confidences between husband and wife as incompetent matter to be deposed by either of them, though they may be competent witnesses to testify to other facts, is found to rest in that public policy that seeks to preserve inviolate the peace, good order, and limitless confidence between the

heads of the family circle so necessary to every well-ordered civilized society. The matter that the law prohibits either the husband or wife from testifying to as witnesses includes any information obtained by either during the marriage and by reason of its existence. It should not be confined to mere statements by one to the other, but embraces all knowledge upon the part of either obtained by reason of the marriage relation, and which, but for the confidence growing out of it, would not have been known. And the same rule prevails in full force, even after the marital relation has been dissolved by death or divorce. Where the incompetency as witnesses of husband and wife on the ground of interest has been removed by statute, as is the case here, either of them may testify, for or against the other, to any fact the knowledge of which was acquired by them independently of their marriage relation, in any manner not involving the confidence growing out of the marriage relation. As Mr. Greenleaf puts it: 'The great object of the rule is to secure domestic happiness by placing the protecting seal of the law upon all confidential communications between husband and wife; and whatever has come to the knowledge of either by means of the hallowed confidence which that relation inspires cannot be afterwards divulged in testimony, even though the other party be no longer living.' 1 Greenl. Ev. (15th Ed.), pp. 254, 334, 337.'' *Mercer* v. *State,* 40 Fla., 216, 24 South., 154, 74 Am. St. Rep., 135 and authorities cited.

The same court in the case of *Ex parte Beville,* 58
Fla., 170, 50 South., 685, 27 L. R. A. (N. S.), 273, 19
Ann. Cas., 48, cited with approval the case of *Mercer*
v. *State* supra, and again held that the change of the
common-law rule, by making one spouse a compellable
and competent witness against the other, does not
affect the rule against disclosure of marital commu-
nications.

The *Beville Case* is reported and fully annotated
in 19 Am. & Eng. Cas., 48.

See, also, Underhill, Crim. Ev., 2245, and Elliott
on Ev., vol. 1, section 628.

It was conceded by the learned assistant attorney-
general that the authorities appear to sustain the con-
tention of learned counsel for the defendant upon this
proposition and we think that he was eminently cor-
rect.   We are therefore of the opinion that, while
chapter 161 of the Acts of 1915 made a husband or
wife a competent witness to testify for or against each
other in all criminal cases, it did not abrogate the
rule as to privileged or confidential communications.
Sound public policy requires that neither the husband
nor the wife shall be permitted to testify, in criminal
cases, as to any matter coming to his or her knowledge
by reason of the marital relation.   The sacredness of
the home and the peace of families can only be pre-
served and protected by enforcing this long-estab-
lished rule of the common law.

It is earnestly insisted for the State, however, that
the defendant cannot take any advantage of any

error in the ruling of the learned trial judge in admitting the testimony of the wife of the defendant, both because of defendant's failure to make proper objections thereto in the court below, and because by the cross-examination of the wife the defendant himself brought out all the privileged evidence testified to by her in chief, and more, and by causing her to embody all the objectionable testimony in her cross-examination defendant waived his original objection, and cannot, therefore, now attack the ruling of the trial judge thereon.

The wife, Mrs. Edith McCormick, was asked, on original examination, what her husband, the defendant, had said to her about his association with her sister Edna, upon whom it was charged in the indictment that the child was begotten. This question was objected to by defendant, because calling for confidential matter arising from the marital relation. The objection was overruled by the court, and defendant reserved an exception. The witness was then permitted to answer the question, saying that her husband told her that he was in trouble about Edna, and would have to leave or be killed; that he was guilty; that he had been too intimate with her only once, about January 1st.

On Cross-examination by defendant, the wife testified that he confessed his guilt to her before he went to Missouri; that Edna had asked him to help her get rid of the child, which he declined to do; and

that her husband had told her these things privately, confidentially, and when they were alone.

Defendant then offered this objection, which was overruled:

"Counsel for defendant here objected to the entire testimony of this witness, Mrs. Edith McCormick, on the ground that her entire testimony was in regard to matters arising out of the relation of husband and wife, which are privileged and confidential."

We are of opinion that the objection of defendant to the admission of this testimony was properly and seasonably made. When the question was asked her to tell what her husband had told her about his association with her sister, it was objected to, and the reason of the objection stated. This objection was overruled, and exception was taken. The question clearly called for an answer that was incompetent, as privileged, under the rule hereinbefore stated. It was presumed to have been privileged. Wigmore, Ev., section 2336, page 3260, and cases cited; *Kimbrough* v. *Mitchell*, 1 Head, 540.

It was not necessary to repeat the exception, as one ruling on one question is enough, and a repetition of similar exceptions is not required. *L. & N. R. R. Co.* v. *Gower*, 85 Tenn., 471, 3 S. W., 824. The request that all the testimony of the wife be excluded, after she was re-examined was unnecessary, and at most was but a reaffirmation of the objection already made and overruled, to which exception had already been

taken. It simply showed that the defendant did not acquiesce in the ruling of the court.

The objectionable portions of the wife's evidence were not elicited by the cross-examination of the defendant. They had already been brought out by the State over the objection of the defendant. Therefore this question does not come within the rule of *Baxter* v. *State,* 83 Tenn. (15 Lea), 664, 665. Exception was duly and specifically taken in the trial court; hence the further rule in *Baxter* v. *State,* supra, of 8 Ency. Pl. & Pr., pp. 217, 218, and of *White* v. *Suttle,* 1 Swan, 174, does not apply.

As to the contention of the State that the cross-examination by defendant of the wife as to confidential matters brought out on direct examination was a waiver of the original objection. In the case of *Horres* v. *Berkeley* Chemical Co., 57 S. C., 189, 35 S. E., 500, 52 L. R. A., 43, it was said:

"It cannot be good law that, after a party has excepted to the ruling of the presiding judge admitting incompetent testimony (which ruling is the law of the case on that trial in the circuit court), the exceptor is prevented from cross-examinaing plaintiff's witness on the matter excepted to, or offering testimony . . . on the same line."

And from the case of *Cathey* v. *M., K. & T. R. R. Co.* (Supreme Court of Texas), 104 Tex., 39, 133 S. W., 419, 33 L. R. A. (N. S.), 103, we quote:

"It would indeed be a strange doctrine, and a rule utterly destructive of the right, and all the benefits

of cross-examination, to hold a litigant to have waived his objection to improper testimony because by further inquiry he sought on cross-examination to break the force or demonstrate the untruthfulness of the evidence given in chief, in the event, as would most usually occur, that the witness should on cross-examination repeat or restate some or all of his evidence given on his direct examination."

In the case of *Barker* v. *St. Louis, I. M. & S. R. Cc* (Supreme Court of Missouri), 126 Mo., 143, 28 S. W., 866, 26 L. R. A., 845, 47 Am. St. Rep., 646, it was said:

"Nor can it matter, in the result, that the defendant's counsel, on cross-examination asked the witness to repeat his account of the interview with the conductor. That course did not amount to a waiver of the right to urge the exception already saved to the ruling of the court in admitting that interview. Counsel might properly conform to that ruling for the purposes of the trial without thereby waiving the right to review the admission of incompetent evidence that had come in over his objection. After that evidence was before the jury, he might then combat it or meet it, as best he might, without waiving the exception already taken. *Tobin* v. *Missouri Pac. R. Co.* (Mo. 1891), 18 S. W., 996; *Martin* v. *N. Y., N. H. & H. R. Co.* (1886), 103 N. Y., 626, 9 N. E., 505."

Mr Chief Justice Beard, in the case of *Thomas* v. *State,* 121 Tenn., 83, 113 S. W., 1041, 130 Am. St. Rep., 756, held that one introducing incompetent evidence

over  objection cannot complain that the court admitted evidence to rebut it.

The State relies upon a rule announced by the same learned judge in the case of *Scott* v. *Bank*, 123 Tenn., 287, 130 S. W., 757. The examiner in that case asked the witness to repeat just what had been brought out on original examination, thus again bringing into the record the testimony objected to. It was also found repeated in a written memorandum, which was made an exhibit to the deposition of the same witness. No effort was made to expunge from the record either this memorandum or the statement made on cross-examination. The two forms of evidence complained of were left in that record uninterfered with.

The instant case is further distinguished from *Scott* v. *Bank*, supra, in that the decision of the question raised herein is the admission of evidence claimed to be authorized under a new statute, and one involving the adoption of a new rule on a question of public policy. It is one that may frequently arise hereafter in the administration of the criminal law in this State.

The sixth and seventh assignments of error are therefore sustained.

The eighth assignment of error is that the court erred in refusing to set aside the verdict because the State was permitted, over the objection of defendant, to introduce by a third party a letter written by the defendant to his wife. This letter is set out in the assignment of error, but is too long to be copied herein. It was written from Charleston, Mo., by the

defendant to his wife at Paris, Tenn., a great part of which is wholly immaterial and irrelevant. The only portions which we can see that would be injurious to the defendant are as follows:

"Edith, I will leave this country soon. I do not know where I will go, yet. . . . Edith, if Edna goes to court again and swears what she swore before, will cause me to have to move. Edith, if you care anything about my welfare, you do all you can to keep her from going to the next court. While I am not afraid of them catching me, I may be at home the first of next month; won't stay but a short time."

It is most earnestly insisted by learned counsel for the defendant that the admission of said letter over his objection was error; it being a privileged communication between husband and wife and inadmissible, without any explanation being offered as to how the witness procured the letter. It was introduced by the State on redirect examination of Edna McChristian, who identified it as being in the handwriting of defendant, but who did not state where she obtained it.

The general and well-settled rule is that letters from one spouse to another are privileged, and fall within the privilege for confidential communications which obtains between husband and wife.

The authorities seem to be uniform that a third person may testify to an oral communication between husband and wife, although his presence was not known; but there is much diversity of opinion as to the right to introduce a writing from one to the other in the

hands of a third person. *State* v. *Wallace,* 162 N. C., 622, 78 S. E., 1 Ann. Cas., 1915B, 425.

We find, upon investigation of the authorities, that there is a great diversity of opinion. Many cases like *Gross* v. *State,* 61 Tex. Cr. R., 176, 135 S. W., 373, 33 L. R. A. (N. S.), 477, and *Mercer* v. *State,* supra, maintain the rule that, if the statement is one about which the spouse cannot be examined as a witness, the shield of privilege is never laid aside, no matter into whose possession the communication, if in writing, may fall.

The wife of defendant testified that he told her he was guilty before she went with him to Missouri in June, 1913; that she stayed with him there until August, 1913, when she went on a visit to her folks in Tennessee, with the expressed intention of returning. The defendant testified that he wrote to his wife, and she to him, for several weeks after she left for a visit to her father's; that she would never live with him again, and that he had only seen her three or four times since, when he had only brief conversations with her.

The two letters from the defendant to his wife, introduced and sought to be introduced while her sister was on the stand, are dated September 21 and October 12, 1913. The wife must have received said letters, but it does not appear how they came into the possession of the prosecution.

When the hostile feeling that must have existed between her father's family and the defendant is considered, there can be but little doubt that it was

through their influence that she did not return to live with her husband, as she had intended and as he expected. If such was their influence over her, the possession by the prosecution of his letters to her can be easily accounted for. Such possession could have been explained by the State, but it did not.

We have held that the wife would not be permitted, on the grounds of public policy, to testify as to what her husband told her. Does not the same rule require that, under the facts of this case, the letters received by her from him should not be introduced in evidence against him? We think so, and therefore sustain the eighth assignment of error.

The ninth assignment is also sustained for the same reason.

The tenth and eleventh assignments of error, in substance, are that a new trial should have been granted because the attorney-general below, in his argument to the jury, over objection duly made, read an excerpt from a letter which had been excluded by the court, and made a statement of "the famous *Cudahy case* in Kansas City," there being nothing in the record to sustain such argument. His statement of the *Cudahy case* is incorporated in the bill of exceptions, and while it, as well as the letter, were subsequently excluded from the jury, yet we think it was highly improper to have permitted the remarks used, especially as to said *Cudahy case*. We advert to those assignments to prevent a repetition of the conduct complained of on a retrial of the case.

McCormick v. State.

As this case may be tried again in the circuit court, we feel that we should not discuss the other assignments of error, as they deal only with the evidence and its weight.

Reverse and remand.