NASHVILLE TRUST COMPANY, Administrator of JAMES C. WILLIAMS, Deceased, v. FRANK WILLIAMS et al.

Middle Section.    September 1, 1932.

Petition for Certiorari denied by Supreme Court, January 21, 1933.

446

Sterling S. Brown, of Woodbury, for appellant, Myrtle Bynum Williams.

A. G. Ewing, of Nashville, for appellees, Frank Williams et al.

Albert G. Ewing, III, of Nashville, for Nashville Trust Co.

CROWNOVER, J. This was a bill of interpleader, or in the nature of a bill of interpleader, filed by the Nashville Trust Company, administrator of the estate of James C. Williams, deceased, against Frank Williams and others, brothers of deceased, and Mrs. Myrtle Bynum Williams, widow of deceased, seeking to have the court determine who was entitled to the proceeds of the insurance on the life of deceased, the bill alleging that his brothers claimed the insurance by parol gift and delivery of the policies while his widow claimed the insurance as widow under the statute; and therefore the Trust Company asked the court to decree the manner of distribution of said insurance fund.

The fund was not paid into court and no decree was entered sustaining said bill as a bill of interpleader and dismissing the complainant.

Defendants, Frank Williams and others, brothers and only heirs at law of James C. Williams, filed their answer setting up the parol gift.

Mrs. Myrtle Bynum Williams, widow of James C. Williams, filed her answer and cross-bill asking for the fund under the statute.

Counsel for all the defendants entered into a stipulation to join issue as if all the pleadings were properly pleaded, and that said agreement should be filed and treated by the court as a joinder of issues.

The Chancellor found and decreed that James C. Williams, the deceased, married the defendant, Mrs. Myrtle Bynum Williams, in 1927, and they lived together two or three months, then separated; that James C. Williams did not wish her to receive any of his insurance; that he delivered his insurance policies to his sister-in-law, Mrs. Alline Williams, to be held by her for his brothers. The Nashville Trust Company, administrator of James C. Williams, deceased,

was ordered to distribute said fund equally between the brothers of James C. Williams, after the payment of costs of the cause and attorneys' fees adjudged.

From said decree the widow, Mrs. Myrtle Bynum Williams, appealed to this court and has assigned errors as follows:

"(1) The court erred in admitting the brothers of James C. Williams (parties to the suit) to testify as to any conversation they had with the deceased, as to his relation with his wife, Myrtle Bynum Williams, or as to anything he said to them or either of them concerning his wife, Myrtle Bynum Williams, over the objection of Myrtle Bynum Williams made at the time, the testimony excepted to being as follows:

"Frank Williams' statement—'James told him he did not want a penny of the insurance to go Myrtle' and that 'Myrtle had not treated him right—that Myrtle had picked up her stakes and left without any cause at all—that she wasn't due anything treating him as she did.'

"Lorenzo D. Williams' statement—'He (James) said I would rather the blackest negro in the state would get it than for it to go to her.'

"'That rather than have her (Myrtle) get his wages, he would quit his job.'"

"(2) There is no evidence to support the verdict.

"(3) The preponderance of the evidence is in favor of the contention of Mrs. Myrtle Bynum Williams."

Appellees Williams brothers did not appeal but assigned errors as to the exclusion of evidence.

James C. Williams lived with his mother, on Hermitage Avenue, Nashville. He had six brothers living, all of whom were married and lived elsewhere. Three brothers had died leaving no descendants. He was a car repairer or railroad carpenter for the Tennessee Central Railroad.

His mother was a widow and had no property except a small amount of money which she had received from the sale of a farm left her by her husband, and about $2500 insurance left her by her son, John, who had died in 1923, out of which she had paid his funeral expenses. She and James lived together, James paying the expenses of the household.

On November 17, 1923, he procured a policy of insurance in the Metropolitan Life Insurance Company for $1500, payable to his mother, Mrs. Annie C. Williams. On June 6, 1927, he obtained a policy in the Good Will Council of Jr. O. U. A. M. for $500, and one in the Brotherhood of Carmen of America for $250, in both of which she was made beneficiary.

On August 6, 1927, he married Myrtle Bynum and she lived with him at his mother's home for two or three months, when she left and returned to her home in Cannon County and never again lived with him.

No change of beneficiary in the above policies was made by him after his marriage.

He continued to live with his mother. After his separation from his wife he took out several policies payable to his mother, as follows: April 6, 1928, Provident Life & Accident Insurance Company, $2000; August 1, 1929, Sun Life Insurance Co. of Canada, $2000; August 1, 1929, Zurich General Accident & Liability Insurance Co., $1000.

His mother, Mrs. Annie C. Williams, died on January 4, 1930. At the time of her illness, in the hospital, Marlin B. Williams, a brother, and his wife, Mrs. Alline Williams, went to stay at her home and Mrs. Alline Williams kept the house. They remained at the house with James C. Williams about ten days after Mrs. Williams' death, during which time James sold all the household goods at private sale except a few articles that were taken by the brothers and himself. The night they left the house James Williams and Mrs. Alline Williams were going through the papers, receipts, etc., and found the said insurance policies in a table drawer, which policies were delivered to Mrs. Alline Williams, and James Williams said, "Alline, I want you to take care of these so that my brothers may have them." She took the policies and kept them in her possession until his death.

James C. Williams went somewhere to board. Later he boarded with one of his brothers, Frank Williams.

Thereafter he said to his brothers, in the presence of J. E. Lehew: "You boys ought to be satisfied, I have given you $7000 or $8000 worth of life insurance."

On June 21, 1930, he was accidentally drowned.

The appellees, Williams brothers, moved this court to strike appellant's assignment of error number two because the appellant did not cite the evidence or the record sustaining said assignment. While this assignment of error does not cite the record the brief in support of same sufficiently cites the record, therefore the motion is overruled.

The Williams brothers assigned errors as to the exclusion of evidence of conversations between the brothers and the deceased, which tended to establish the gift of the policies. We cannot consider these assignments for the following reason: On the introduction of this testimony appellant excepted, which exception was sustained by the Chancellor; appellees did not except to the Chancellor's ruling in excluding the testimony.

"An objection is of course waived by a failure to except when it is overruled." 9 Ency. of Evid., 134.

"An objection to a question must be perfected by an exception; if none is taken it will be considered that the objection is abandoned." 8 Ency. of Plead. & Prac., 246.

"Where rulings of the Chancellor on evidence were set out as part of his decree, but exceptions to such rulings were not noted thereon, and neither the exceptions to such rulings nor the evidence were preserved by bill of exceptions, the rulings will not be considered on appeal." Still v. Armstrong, 60 S. W., 509.

"Evidence excluded by the Chancellor on the trial of a cause, and to which no exception was taken, cannot be considered on appeal for any purpose of proof." Chicago Bldg. & Mfg. Co. v. Barry (Tenn.), 52 S. W., 451.

"This court will not reverse on account of the lower court's exclusion of a witness' answers to pertinent questions, when the record fails to show any exception to the court's ruling." Insurance Company v. Scales, 101 Tenn., 628, 49 S. W., 743.

However, we think the Chancellor was correct in sustaining the objections to this testimony, as the suit was by the administrator and they were parties for or against whom a judgment might be rendered. Atchley v. Rimmer, 148 Tenn., 303, 255 S. W., 366; Wilson v. Wilson, 151 Tenn., 486, 267 S. W., 364; Shannon's Code, sec. 5598.

It is contended by the Williams brothers that the statute does not apply (a) because the administrator is only a nominal party in this case; that the contest is between the appellant and appellees and no judgment is sought against the administrator. (b) Because even if the testimony of any one of the brothers was incompetent as to his own interest, it would not render his testimony incompetent as to the interest of his other five brothers. (c) Because this testimony was in rebuttal. In answer to these propositions, we hold that the bill is not strictly a bill of interpleader, as the Trust Company did not propose to pay the fund into court. Daniel v. Fain, 73 Tenn., 259; 33 C. J., 450-1, sec. 33. The complainant was not discharged but remained a party to the suit. The administrator being a party and in possession of the fund, a judgment necessarily had to be entered against it directing a distribution of the fund.

There is nothing in the contention that each brother's testimony is competent as to the interest of the other brothers, although incompetent as to his own interest.

"A party cannot testify in favor of his co-party where the interests of the co-parties are joint or so connected that all must succeed or fall together." 40 Cyc. 2334.

"When there is antagonism of interest between two parties, whether one be plaintiff and the other defendant, or both plaintiffs, or both defendants, neither can testify against the other

as to any transactions with, or statements by, the testator or intestate of an executor or administrator, against whom, or for whom judgments may be rendered, unless called to testify thereto by the parties whose interest is antagonistic to that of the party called to testify." Trabue, Davis & Co. v. Turner, Admr., et al., 10 Heisk., 447; Roy v. Sanford, 140 Tenn., 389, 204 S. W., 1159.

The evidence excluded was not in rebuttal, and was incompetent. Therefore the appellees' assignments of errors must be overruled.

However, these propositions are not determinative, as there was sufficient material, competent evidence to support the verdict without this evidence (Brown v. Fuqua, 9 Tenn. App., 28), as is hereinafter shown.

Appellant's first assignment is that the court erred in admitting testimony of the Williams brothers as to statements made by James C. Williams in regard to his wife, in which he stated that he didn't want his wife to have any of his insurance and that he would rather the blackest negro in the state would get it than for it to go to her, and that he would quit his job rather than let her get his wages. There was an objection as to one of the statements but the Chancellor failed to rule on it and there was no objection made to the other statements. Under the law above quoted it was necessary for the widow to object and that the Chancellor rule upon the objection. This was not done and the evidence was admitted without proper exceptions and should be considered by the court.

This situation does not come within the rule announced in the cases of McCormick v. State, 135 Tenn, 218, 186 S. W., 95, and Railroad v. Gower, 85 Tenn., 465, 3 S. W., 824, to the effect that it is not necessary to repeat an objection to a question put to a witness and overruled by the court, as one ruling on one question is enough, and the repetition of similar exceptions to other like evidence is not required. In the case at bar, where exceptions were made to like evidence the Chancellor sustained the exception and excluded the evidence; hence it was necessary to repeat the objection to this evidence. 3 C. J., 824, sec. 734. Hence this assignment of error must be overruled.

Mrs. Myrtle Bynum Williams' assignments that there is no evidence to support the verdict, and that the preponderance of the evidence is in favor of her contentions, are not well made and must be overruled.

The testimony of all the brothers of James C. Williams as to the gift was excluded. There were five other witnesses, all of whom were disinterested: Mrs. Alline W. Williams, J. E. Lehew, G. L. Ferguson, Hubert Lyle and E. O. Birdwell.

Mrs. Alline Williams testified that about ten days after the death of Mrs. Annie Williams, she and James C. Williams, just before he broke up housekeeping, were going over the papers and receipts kept by Mrs. Annie Williams and James C. Williams in the drawer of a little table in her room in their home, when they found the insurance policies on the life of James C. Williams and he said to her, "Alline, I want you to take care of these so that my brothers may have them;" that she took them and kept them until his death. She further testified that James C. Williams carried with him to his boarding house all other articles retained by him after disposing of the household goods. It appears that James visited her home several times a week until his death, but did not on any of these visits ask for the policies.

She further testified that his feeling toward his wife, Mrs. Myrtle Williams, was "rather bitter. He didn't want her to have any of his policies or any interest in any estate he might have," which was corroborated by the testimony of the brothers that he didn't want his wife to have any of his insurance or wages.

J. E. Lehew testified that he heard James say to his brothers, "You boys ought to be satisfied—I have given you $7000 or $8000 worth of life insurance."

Of course, proof of declarations of the intention to give are admissible. 22 C. J., 281-3, secs. 297-8; 28 C. J., 675-8, secs. 80, 83.

G. L. Ferguson testified that James had told him that he "didn't want to have anything else to do with his wife;" that she had treated his mother badly. He also stated that James had told him, after the separation from his wife, that he had his life insured for his mother.

We think the Chancellor was correct in holding that "Birdwell's conclusion that he meant his brothers because he stated that 'he didn't intend for any of his people on the outside that way to have any of his insurance,' is not a reasonable inference from what the witness quotes the deceased as saying.

"Delivery with intent to pass the title irrevocably is sufficient. In such case, of course, it is the equitable or beneficial interest that passes, while the mere naked legal title remains in the donor." Gledhill v. McCoombs (Me.), 86 Atl., 247, 45 L. R. A. (N. S.), 26.

Did James Williams in fact give these policies to Alline Williams in trust with the full intent to transfer all rights thereunder to her?

The measure of proof in this class of cases should be ample. It should be full, clear and convincing, because the opportunity for fraud is so great. Oftentimes the circumstances are such as to oblige the court to look with suspicion upon the claim of the alleged donee. But the case at bar is free from all such suspicion, and the witnesses are not discredited.

A wife may be a competent witness to prove a gift and delivery by the decedent to her husband. Likewise the same rule obtains with respect to other members of the family not parties to the suit and they may be competent witnesses. Gibson v. Parkey, 142 Tenn., 99, 217 S. W., 647; Wilson v. Wilson, 151 Tenn., 490, 267 S. W., 364.

We hold the intention to give existed and the policies were delivered to Mrs. Alline Williams for his brothers, therefore the gift was consummated.

A policy of life insurance may be made the subject of a gift, in the same manner as other choses in action, and such gift may be effected by the mere delivery, without assignment, of the instrument, if accompanied by such words or acts on the part of the donor as indicate a clear intention to give, coupled with the subsequent retention by the donee. Box v. Lanier, 112 Tenn., 393, 79 S. W., 1042; 37 C. J., 425-6, sec. 129; Gledhill v. McCoombs (Me.), 86 Atl., 247, 45 L. R. A. (N. S.), 26; Trust Co. v. Bank, 123 Tenn., 617, 134 S. W., 311.

> "Delivery of property to a third person as agent or trustee, for the use of the donee, and not as agent of the donor, under such circumstances as indicate that the donor relinquishes all dominion and control over the property, is a sufficient delivery to complete the gift, which, in such case, is not revoked by the subsequent death of the donor before the property has been actually delivered to the donee. And the validity of the gift is not affected by the fact that the trustee is not to deliver the property to the donee until after the donor's death." 28 C. J., 640-1, sec. 32; Marshall v. Russell, 93 Tenn., 261, 25 S. W., 1070.

> "Where it is once ascertained that it is the intention of the donor to make such a gift and all is done which is possible under the circumstances in the matter of delivery, the gift will be sustained." Scott v. Bank, 123 Tenn., 258, 130 S. W., 757; Chandler v. Roddy, 163 Tenn., 338, 43 S. W. (2d) 397.

Mrs. Alline Williams' evidence as to the gift is corroborated by J. E. Lehew, who testified that James C. Williams, in his presence, told his brothers that he had given them this insurance.

It was held in Atchley v. Rimmer, supra, and Wilson v. Wilson, supra, that a gift could not be established by proof of declarations of the alleged donor alone, but it was conceded that such proof might be considered along with other evidence to set up a gift.

Appellant, Mrs. Myrtle Bynum Williams, did not testify.

We are of the opinion that the uncontradicted evidence is that James C. Williams had the intention to make a gift of this insurance to his brothers and delivered the policies to Mrs. Alline Williams to be held by her in trust for them.

In the case of Gledhill v. McCoombs, supra, the son delivered a policy to his mother and said: "Here is your policy, Mother, for $10,000. Take care of it;" and in Wells v. Jenkins, 7 Hig., 566, the witness testified "that the assured told him that she wanted the proceeds of the policy to go to Sarah Wells at her (insured's) death," and the policy was delivered. The courts held these statements accompanied by delivery of the policies were sufficient to consummate the gifts. The language in the case at bar is as strong, and shows an intention to give accompanied by actual delivery; hence the assignment of error must be overruled, and the decree of the Chancellor is affirmed. The cost of the cause will remain as adjudged below, but the cost of the appeal will be adjudged against appellant, Mrs. Myrtle Bynum Williams. The cause will be remanded to the Chancery Court of Davidson County for distribution of the funds as decreed by the Chancellor.

Faw, P. J., and DeWitt, J., concur.