**Hollis MORTON, Petitioner-Appellant,**

v.

**C. Murray HENDERSON, Warden Tennessee State Penitentiary, Respondent-Appellee.**

**No. 17656.**

United States Court of Appeals
Sixth Circuit.

Oct. 17, 1967.

Hollis Morton, in pro per.

David W. McMackin, Asst. Atty. Gen., State of Tennessee, Nashville, Tenn., for appellee, on brief, George F. McCanless, Atty. Gen., of counsel.

Before WEICK, Chief Judge, and O'SULLIVAN and PHILLIPS, Circuit Judges.

PER CURIAM.

This appeal is from an order of the District Court denying without an oral hearing appellant Morton's amended petition for a writ of habeas corpus. It was submitted to this Court on briefs, without oral argument. Morton had been granted leave to appeal in forma pauperis and his brief was filed pro se.

Morton was convicted by a jury in the Circuit Court of Maury County, Tennessee, of murder in the first degree, and was sentenced to imprisonment in the state penitentiary for ninety-nine years. He had been represented at the trial by three lawyers employed by his family.

The judgment of conviction was affirmed by the Supreme Court of Tennessee in a written opinion, which carefully considered all of the questions then raised. Thereafter, he filed a habeas corpus petition in the Circuit Court of Davidson County, which was dismissed after a full evidentiary hearing at which he was represented by counsel appointed by the Court. An appeal was taken to the Supreme Court of Tennessee, which again affirmed in a written opinion, in which it held that no constitutional right of Morton had been violated in his trial and conviction.

The District Court ruled that the petition for habeas corpus did not set forth facts sufficient to justify the granting of relief. An amended petition was then filed, which the Court considered and denied.

The opinions of the Tennessee Courts disclose the following facts. In the evening of September 6, 1963 Morton escaped from the Maury County workhouse and returned to his home where he went to bed. It was his second escape from the penal institution. A constable and two state highway patrolmen went to Morton's home with a warrant for his arrest. After the constable had identified himself and demanded that Morton come out of the house, Morton shot through a window and killed the constable.

Morton's defense was that he shot the constable thinking he was a burglar about to enter his home. The trouble with this contention was that not only did the two state highway patrolmen testify that the constable called out his name and stated that he had a warrant for Morton's arrest, but Morton's wife and 17-year old son, who were in the house with him, heard what the constable said and corroborated the patrolmen's testimony. They (Morton's wife and 17-year old son) asked Morton whether they should open the door, and he said, "No". The trial court properly submitted the issues of fact to the jury and its instructions have been approved on appeal.

In his post conviction proceedings, Morton complained about inadequate representation by the three lawyers of his own choosing. Specifically, he argues that these lawyers neglected their duty by not asking for a change of venue because of newspaper publicity. The lawyers did consider such a request but concluded not to ask for it.

The Tennessee courts found there was no merit in this claim and that Morton was represented by reputable and able lawyers. One of these attorneys was recently elected District Attorney General for the Eleventh Judicial Circuit of Tennessee. The question of whether it was prudent to ask for a change of venue must necessarily be determined by conditions which existed at the time of the trial. The state was asking for the death penalty. Transfer of the case to another county might have involved the risk of a more severe sentence than that meted out to appellant. In Tennessee sentences are imposed by the jury.

█ There was not much publicity prior to Morton's trial. There was no evidence that jurors read newspapers during the trial. It would be difficult for any court to say at this late date that the attorneys were wrong in exercising their best judgment in not asking for a change of venue.

█ Morton further claims that the Court erred in permitting his wife to testify against him. This claim was presented in the direct appeal to the Supreme Court of Tennessee and was found to be without merit. Tennessee law permits such testimony when it does not involve the disclosure of confidential communications. T.C.A. § 40–2404; McCormick v. State, 135 Tenn. 218, 186 S.W. 95, L.R.A.1916F, 382. The alleged communications took place in the presence of the 17-year old son, whose testimony was to the same effect as his mother's testimony. In any event, the alleged error does not reach constitutional proportions.

Morton further contends that his trial was unfair because it was necessary to question two hundred and fifty prospective jurors on voir dire before the jury was finally selected, and that the jury demonstrated its prejudice against him by imposing what amounts to a life sentence. It is not unprecedented in a murder trial to examine a large number of prospective jurors on voir dire; it is a frequent occurrence. The fact that this was necessary is no proof that the jurors finally selected were biased and prejudiced. We do not regard a sentence of life imprisonment for murdering a policeman as an excessive sentence. The death penalty might have been imposed under Tennessee law.

Full and fair consideration was given to the contentions of Morton by the Tennessee courts. Under these circumstances, we think the District Court's disposition of the matter was sufficient.

Affirmed.