**William H. NABORS and Landy Box, Co-Administrators, Estate of Raymond Box, Deceased, Petitioners,**

**v.**

**Laverne GEARHISER, Respondent.**

Supreme Court of Tennessee.

May 19, 1975.

Rehearing Denied July 7, 1975.

Mark H. Collier, Waverly, Claude Callicott, Nashville, for petitioners.

Frank L. Hollis, Peeler & Hollis, Camden, for respondent.

## OPINION

COOPER, Justice.

This case involves a claim against the estate of Raymond Box, deceased, upon a promissory note in the principal amount of $3500.00 given as part payment for the Big Sandy Hotel, Big Sandy, Tennessee. The County Court of Houston County denied the claim without any finding of fact or statement of reasons for the decision. Upon appeal by claimant, respondent here, the Court of Appeals reversed and remanded, holding that the estate was liable on the note. This court granted certiorari.

On October 29, 1962, Raymond Box and Laverne Gearhiser entered into a contract by which Mrs. Gearhiser agreed to sell and Box agreed to buy the Big Sandy Hotel, together with the furniture, fixtures and equipment in the building. Mr. Box paid $1500.00 in cash, assumed a mortgage indebtedness of $12,438.57 payable to Tennessee Valley Life Insurance Company in monthly installments, and executed to claimant the promissory note of $3500.00 payable in six annual installments. Pay-

ment of the $3500.00 note was secured by a chattel mortgage covering described personal property belonging to Mr. Box. Mrs. Gearhiser, in turn, agreed to execute a deed to the hotel to Mr. Box upon payment of the $3500.00 note. The contract further provided:

"That if any default be made in the payment of any of the payments on the notes above mentioned, and if any such default shall continue for sixty (60) days, all installments previously paid shall, at the option of the Seller, without notice or demand be and become forfeited, irrevocably, and be retained by the seller as liquidated damages, and thereupon this agreement shall be of no further force or effect; provided, however, that nothing herein contained shall be deemed or construed to prevent the Seller from enforcing specific performance of this agreement, in the event of any default on the part of the Purchaser in keeping, observing and performing any of the conditions, covenants and terms herein contained."

Mr. Box took possession of the Big Sandy Hotel under the sales agreement and, for a time, made payments on the mortgage to Tennessee Valley Life Insurance Company. Exhibits in the record show that Mrs. Gearhiser made a part payment of $17.36 on the mortgage in June, 1963, the full monthly payment of $91.36 in July, 1963, and a part payment of $41.36 in August, 1963. These payments were made by Mrs. Gearhiser to keep Tennessee Valley Life Insurance Company from foreclosing, and to keep Mr. Box from losing the property.

During this period, Mrs. Gearhiser learned that the chattel mortgage she held on personal property of Mr. Box to secure payment of the $3500.00 note was subject to a lien held by the Third National Bank in Nashville. Mrs. Gearhiser then consulted her attorney, who set up a meeting between Mrs. Gearhiser and Mr. Box in the attorney's office. Anita Baker, Mrs. Gearhiser's daughter, also attended the meeting.

After the meeting and on November 1, 1963, Mr. Box made a payment of $104.00 on interest due on the $3500.00 note.

In the face of objection by counsel for the estate of Mr. Box, Mrs. Gearhiser testified that in the September meeting she and Mr. Box agreed to avoid the alternatives set out in the sales contract in the event of default by Mr. Box and agreed that Mr. Box would not be relieved of the obligation to pay the $3500.00 note. On cross-examination Mrs. Gearhiser again related the details of the agreement, though not called for by questions asked her by counsel.

The Court of Appeals accepted Mrs. Gearhiser's version of the September meeting agreement, and concluded that the estate of Mr. Box was liable for payment of the $3500.00 note.

Petitioner contends that the testimony of Mrs. Gearhiser was inadmissible under T.C.A. § 24–105, the so-called Dead Man's Statute; and, that in any event, there was no consideration for the September, 1963, agreement.

T.C.A. § 24–105 provides that:

"In actions or proceedings by or against executors, administrators, or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or award, unless called to testify thereto by the opposite party. . . ."

There is no question but that the testimony of Mrs. Gearhiser concerning the agreement made with Mr. Box in September falls with the prohibition of the above statute. Mrs. Gearhiser is a party to the suit and the suit is against the administrators of Mr. Box's estate. The Court of Appeals recognized this, but was of the opinion that petitioner had waived his objection to the testimony of Mrs. Gearhiser by not insisting on a specific ruling by the trial judge on the objections, and by cross-examining Mrs.

Gearhiser and not moving to strike statements by her concerning transactions with Mr. Box.

This court did say in *Shelton v. Martin*, 180 Tenn. 454, 176 S.W.2d 247 (1943), that:

"Speaking generally, we think that before the Trial Court can be put in error for the admission or rejection of testimony that it must be clearly shown that the attorney who considered himself aggrieved insisted on a ruling, and that the Court failed or refused to make one, or that on such insistence, the Trial Court made a ruling and that such ruling was erroneous."

We still adhere to this general rule, but do not believe it requires a holding in this case that petitioner waived his objection to the testimony of Mrs. Gearhiser. Counsel for petitioner objected on numerous occasions when Mrs. Gearhiser undertook to testify concerning transactions between Mr. Box and herself, and counsel specifically predicated these objections on the Dead Man's Statute. The trial judge never ruled specifically on the objections, but, for that matter, he never ruled on any objection made by either party during the trial of the case. We can only speculate as to the reason for the failure to rule on objections, but would point out that the trial judge is a layman not skilled in conducting trials. But, whatever the reason, the continual objections by counsel were sufficient in our opinion to put the trial judge on notice that petitioner was insisting on his right to have testimony excluded from the record which was in violation of the Dead Man's Statute. The failure of the trial court to rule directly on the objections under these circumstances was tantamount to overruling the objection and will be so treated.

As heretofore noted, Mrs. Gearhiser also related the details of the agreement on cross-examination. However, it is a general rule followed in this state, that where

transactions with the decedent are first developed on direct examination over objections of representatives of the decedent, the objections are not waived by subsequent cross-examination relative to the transactions testified to on direct examination. See *Bowlen v. Baker*, 147 Tenn. 36, 245 S.W. 416 (1922), wherein it is stated on page 39, 245 S.W. on page 417 that:

"The complainant was not first called to testify to the alleged contract with the deceased on cross-examination, but she undertook to testify as to this contract on direct examination, as heretofore appears. Defendant merely cross-examined her as to this contract. Defendant had excepted to such testimony on the direct examination, and he did not waive these exceptions by this cross-examination. This is now settled in Tennessee by *McCormick v. State*, 135 Tenn. 218, 186 S.W. 95, L.R.A., 1916F, 382, . . . ."

From our view of the record, we hold that the trial judge was in error in admitting testimony of Mrs. Gearhiser relative to an alleged agreement between her and Mr. Box entered into in September, 1963, and that the Court of Appeals was in error in basing its decision in this case on Mrs. Gearhiser's testimony.

Without Mrs. Gearhiser's testimony, there is little or no evidence of any modification of the sales agreement by the parties, except for the fact that Mr. Box voluntarily made an interest payment on November 1, 1963. This is due, at least in part, to the fact that the trial judge admitted Mrs. Gearhiser's testimony in evidence, leaving no necessity for additional evidence on the issue. However, it is shown in the record that two witnesses were present and heard the conversation between Mrs. Gearhiser and Mr. Box that allegedly resulted in the modification to the sales agreement. These witnesses are competent to testify to the transaction, and hold the key to a just decision in this case.

Where it appears from the record, as it does here, that more satisfactory evidence can be obtained on the issues presented, and, if produced, will enable the court to come to a more satisfactory conclusion, the cause may be remanded for such additional proof, and for a decision in the trial court based thereon. T.C.A. § 27–329. *Stokely v. Southern Railway Company*, 57 Tenn.App. 271, 418 S.W.2d 255 (1967); *Federated Mut. Imp. & Hdwe. Ins. Co. v. Anderson*, 49 Tenn.App. 124, 351 S.W.2d 411 (1961).

Accordingly, the judgments entered in this case are set aside and the case is remanded to the trial court for the taking of additional proof and for the entry of a judgment based on that proof and the proof now in the record. Two-thirds of the costs are adjudged against Mrs. Gearhiser and her surety, and one-third of the costs are adjudged against the estate of Raymond Box and its surety. Costs in the trial court will await the outcome of the case on the remand.

HENRY, BROCK and HARBISON, JJ., concur.

FONES, C. J., dissents.

FONES, Chief Justice (dissenting).

I respectfully dissent.

The original contract between Mrs. Gearhiser and Mr. Box was a contract for the sale of land, etc., embraced by the statute of frauds. T.C.A. § 23–201(4).

While the authorities are not in agreement, and Tennessee has no decision on point, the better rule, in my opinion, is that a contract within the statute of frauds cannot be modified by a parol agreement.

Next, there is no consideration to support the parol agreement.

Further, in my opinion, this is not an appropriate case for remand pursuant to T.C.A. § 27–329 or the three cases cited in the majority opinion. Mrs. Gearhiser has had her day in court. The two witnesses,

her sister and her lawyer testified in the trial court and I find no justification for giving claimant a second chance to prove a parol modification of a written contract, by two interested witnesses who were available at the first trial.

Otherwise, I am in accord with the opinion of the majority.